Mr. Justice DANIEL
 

 delivered the opinion of the court.
 

 In the investigation of these cases it is deemed unnecessary to examine
 
 seriatim
 
 the five bills of exceptions sealed by the Circuit Court, and made parts of the record in each of them. The papers declared upon fis libellous, and the instructions asked of the Circuit Court, are literally the same in both actions; the reasons, toó, which influenced the decision, of the court pervade the whole of these in-* strüctions,' and are prese fled upon their face.
 

 ■ Before proceeding more particularly to consider the rulings of the court upon these instructions, it may be proper to animadvert upon a point of pleading which was incidentally raised in the -argument' for the defendants, in error; which point was this: that, assuming the publication declared on as a libel to be one which would be
 
 prima Jade
 
 privileged, the circumstances which would render it illegal, m other words, the. malice which prompted it, must be- expressly averred. Upon this point the court wifi observe, in the first . place, that in cases, like the one supposed in argument, they hold, ■that in describing the act complained of the word “maliciously”'is not' indispensable to characterize it; they think that the law is satisfied with words of equivalent power and import: thus, for instance, the word.“ falsely” has been held to be sufficiently expressive of a malicious intent, as will be seen in the authorities cited 2 Saund. 242 a; (note 2.) But .the declaration in each of these cases charges the defendants, in terms,-with maliciously and wickedly intending to injure the-plaintiff in his character,.and thereby to effect his removal from office, and the appointment of one of the defendants in his stead; and with that view,-with having falsely, wickedly,- and maliciously composed and published, and having caqsed to be composed' and published, a false, malicious, hnd defamatory libel concerning the plaintiff, both as q citizen and an officer. The .averments in these declarations appear to the court, in point of fact, to be full'up to the requirement insisted on, and to leave no1 room for the criticism attempted with respect-to them.. But the defence set up for the defendants in error reaches much farther and to results infinitely higher
 
 *285
 
 than- any thing dependent upon a mere criticism upon forms of pleading. It involves this issue, so important to society, viz.:. How far, tinder an alleged right to examine into the fitness and .qualifications of men who are either in office or are applicants for office — or, how far, under the obligation of a supposed duty, to arraign such men either at the bar of their immediate superiors or that of public opinion, their reputation, their acts, their motives or feelings may be assailed with impunity — how far that law, designed for the protection of all, has placed a certain class of citizens without the pale of its protection ? The necessity for an exclu&on like this, it -will be admitted by all, must indeed be very strong to justify it: it will never be recognised for trivial reasons,, much less upon those that may be simulated or unworthy. .If we look to the position of men in common life, "we see the law drawing providently around them every security for . their safety and their peace. It not only forbids the imputation to an individual of acts which are criminal and would subject him to penal.infliction; but, regarding man as a sympathetic and social-creature, it will-sometimes take cognisance of injuries ¿fleeting him exclusively in that character. It will accordingly- give a claim to redress to him' who shall be charged with . 'what is calculated to exclude him'from social intercourse; as, for instance, with being the subject of- an infectious, loathsome, and incurable disease. The principle of the law álways implying injury, wherever the abject or effect is the exposure of the accused to criminal punishment or to degradation in society. These guardian provisions óf the law, designed, as we have said, for the -security and peace of persons in the ordinary walks of. private life, appear in some fespects to be extended still -farther in relation to persons invested with official’ trusts. - Thus it is said that words not otherwise, actionable, may form the basis of an action’when spoken of a party in respect e>f..his office, profession, or'business: Ayston
 
 v.
 
 Blagrave, Strange, 617, and 2 Ld. Raym. 1369. Again, in Lumby v. All-day, 1 Crompt. & Jarv. 301, where words are spoken of a person in an office of profit, which have a natural tendency to occasion the loss, of such office, or which impute misconduct in it, they are actionable. And this principle, embraces all temporal offices of profit or trust; without limitation 1 Starkie on Slander, 124.
 

 With regard to that species of . defamation, which is effected by "writing-or, printing, or by pictures-and signs, and which is technically denominated
 
 libel,
 
 although in general the'rules applicable to it. are the same which apply to verbal slander, ,yet in other respects it-is treated with a-sterner rigour than, the latter; because it must have been- effected with coolqess and deliberation, and must be more ■permanent and-extensive in its operation than words, which-are frequently thé offspring Of sudden gusts of passion, and soon may be buried in oblivion: Rex
 
 v.
 
 Beau, 1 Ld. Raym. 414. It follows,therefore, that actions, may .be. maintained for defamatory words pub- -
 
 *286
 
 lished in writing ór in print, which would not have been actionable if spoken. Thus, to publish of a man in writing, that he had the itch and smelt of brimstone, has been held to be a libel.
 
 Per
 
 Wilmot, C. J., in Villers
 
 v.
 
 Mousley, 2 Wils. 403. In Cropp
 
 v.
 
 Hilney, 3 Salk., Holt, C. J., thus lays down the law :' “ That scandalous matter is. not necessary to make a libel; it is enough if the-defendant induce a bad opinion to be had. of the plaintiff, or make Him contemptible or ridiculous.N And Bayley, J., declares in McGregor
 
 v.
 
 Thwaites, 3 Barn. & Cres. 33, that “an action is maintainable for slander either written or printed, provided the tendency of it be to bring a man into hatred, contempt, or ridicule.” . To the same effect aré .the decisions in 6 Bingh. 409, The Archbishop of Tuam
 
 v.
 
 Robeson; and in 4 Taunt. 355, Thorley
 
 v.
 
 The Earl of Kerry. In' eyery instance of slander, either- verbal or written, malice is an essential. ingredient: it- must in -either be expressly or substantially averred in the pleadings’; and whenever thus substantially averred, and the language, Cither written .or spoken, is proved as laid, the law will infer malice until the proof, in the -event of denial, be overthrown," or the- language itself be satisfactorily explained. The^defenc.e of the defendants in error, the defendants likewise in the .Circuit Court, is rested upon grounds forming, it is said, an established exception to the rule in ordinary actions for libel; grounds on which the decision of the Circuit Court is defended in having excluded from the. jury, under the declarations in these' cases, the writings charged in them as libellous. These writings were, offered as evidence of express malice in the defendants. The exception relied on belongs to a class which, in the elementary treatises, and in the decisions upon libel and slander, have been "denominated privileged communications' or publications. We will consider, in the first place, the peculiar character, of such communications, and the extent of their influence upon words or writings as to which, apart from that character, the law will imply malice: Secondly, we will examine the burden or obligation imposed by the law upon the party complaining to remove presumptions which might séem to be justified by the occasion of such communications, andto 'develope their true nature. And' lastly, we will compare the requirements of. the law with the character of the publication before-us, and with the proceedings of .the Circuit Court in reference thereto.' The exceptions found in the treatises and decisions before alluded to are such as the following: 1. Whenever the author and publisher of the alleged slander acted ini the
 
 bond fide
 
 discharge of a'public or private duty, legal or moral; or in the prosecution of his own rights'or interests. For example, words spoken in confidence and friendship, as a caution ; or a letter written confidentially to persons who employed A. as a solicitor, conveying charge's injurious to his professional character in the management of certain concerns which they had intrusted to him, and in which the writer of the letter was also interested,
 
 *287
 
 2. Any thing said or written by a master in giving the .character of a servant who has been in his employment. 3. Words used in the course of a legal or judicial proceeding, however hard they may bearupon the party of whom they are used. 4. Publications duly made in the ordinary mode of parliamentary proceedings, as ¿.petition printed and delivered to the members of a committee app'oint-,ed by the House of Commons to hear and examine grievances.
 

 But'the term “exceptions,” as applied to cases like those, just enumerated,'could never be interpreted to mean that there is a. class of aetors or transactions placed above the cognisance of the law, absolved from the’ commands of justice. It is difficult to conceive how, in society where rights and. duties’ are relative and mutual, there can be tolerated those who are privileged. to do injury
 
 legibus soluti;
 
 and still more difficult to imagine, how such a privilege could be instituted or tolerated upon the principles, of social good.’ The privilege -spoken of in the books should, in our opinion, be taken with strong and well-defined qualifications. It properly signifies this, and nothing-more’. That the excepted instances shall so far change the ordinary rule with respect to .slándérous or libellous matter, as to remove the regular and usual presumption- of malice, and to make it incumbent on the party complaining to show malice, éither by the construction of the spoken or written matter, or by facts and circumstánces connected with , that matter, or with the situation of the parties, adequate to authorize the conclusion. Thus in the case of Cockayne v Hodgkisson, 5 Car. & Pa. 543, we find it declared by Parke, Baron, “That’ every wilful and unauthorized publication injurious to ■ the character of another, is a libel; but where the-writer is-actiog on any duty legal or moral, towards the person to whom he writes; or .is bound by his situation to protect the interests of such person, that which he writes under such circumstances is a privileged communication, unless the writer be actuated by malice.” So in Wright
 
 v.
 
 Woodgate, 2 Crompton, Meeson & Roscoe, 573, it is said, “a privileged communication means nothing metre than that the occasion of making it rebuts the
 
 prima fade
 
 inference of malice arising from the publication of matter prejudicial to the character of the plaintiff, and- throws upon him the onus of proving malice in fact; but not of proving it by extrinsic evidence only; he has still a right to require that the alleged libel . itself shall be submitted to the jury, that they .may judge whether there is .evidence of malice on the face of it.” In regard to the second example mentioned, viz., that of a master giving the character of a servant, although this is a privileged- communication, it is said by Lord Mansfield in Weatherstone
 
 v.
 
 Hawkins, 1 T. R. 110, and by Parke, J., in Child
 
 v.
 
 Affleck, 9 Barn. & Cres. 406, that if express malice be shown, the master will not be excused. And the result of these authorities, with many others which bear upon this head is this, that if the-conduct of the defendant .entirely con
 
 *288
 
 sists of an answer to an-inquiry, the absence of malice will be.presumed, unless .the plaintiff produces evidence of malice; but if a máster unasked, and officiously, gives a bad character, to a servant, ■or if his answer be attended with circumstances from which malice may be inferred,^ wj'll be a question for the jury to determine, whether he acted
 
 bona fide
 
 or with malice;
 

 With respect .to words used in a .course of judiciál proceeding, it has been ruled that they are protected by the occasion, and cannot form the foundation of an action- of slander without proof of express malice; for' it is said that it would be matter of public. inconvenience, and would deter persons from preferring'their complaints against offenders, if words -spoken in the course of their giving or preferring their complaint should be deemed' actionable; per Lord Eldon in Johnson
 
 v.
 
 Evans, 3 Esp. 32: and in the case of Hodgson
 
 v.
 
 Scarlett, 1 Barn. & Ald. 247, it is said by Holroyd, J,, speaking of the words of counsel in the argument of a cause,
 
 “
 
 If they be fair comments upon the evidence, and relevant to the matter in issue,'then unless malice be shown, the occasion justifies them. If, however, it -be proved that they were not spoken
 
 bona fide,
 
 or express malice be shown, then they may be . actionable.” Abbot, J., in the same case remarks,- “-I am . of opinion that.'no "action can’be. maintained unless it can be shown that the counsel availed himself of his situation maliciously to' utter words wholly unjustifiable.” "In relation-to proceedings in courts of justice, it has', been, strongly questioned whether, under all circumstances, a publication: of a.full'report of such proceedings will constitute a defence in an action for a libel. In the casé- of Curry
 
 v.
 
 Walter, 1 Bos. & Pul. 525, it was held that a true report of what passed in' a court of justice was not actionable. The same was said by Lord Ellenborough in Rex v. Fisher, 2 Camp. 563; but this same judge in Rex
 
 v.
 
 Crevy, 1 M. & S. 273, and Bayley, J., in Rex
 
 v.
 
 Carlisle, "dissented from this doctrine as laid down in Curry
 
 v.
 
 Walter, observing that it must' be understood with very great - limitations;, and by'Tindal, C. J., in the case of Delegal
 
 v.
 
 Highly, 3 Bing. N. C. 690, it is said “to be an established principle upon which the privilege of publishing the report-of any judicial proceeding is admitted te rest, that such- report must be strictly confined to the actual pro.ceédings in court, and'must contain no defamatory observations or Comments from any quarter whatsoever in addition to what forms strictly and properly the legal, proceedings.” So .a publication of the result of-the evidence is riot privileged; -the evidence itself must.be published. Neither is a publicatiori of a counsel’s speech unaccpiripanied by the evidencé. Lewis
 
 v.
 
 Walter, 4 Barn. & Ald. 605;
 
 Flint
 
 v. Pike, Ibid. 473.
 

 Publications duly inade in the ordinary course of parliamentary proceedings- have- been ruléd to be privileged;, and therefore not actionable. As.where a false and scandalous'libel "was contained :in
 
 *289
 
 a petition which the defendant caused to be printed arid delivered to ■the members of the committee appointed by the House of Commons to hear and examine grievances, it. was held not to be-actionable. Such appears to be the ’ doctrine ruled in Lake
 
 v.
 
 King, 1 Saund. 163; and the reason there assigned for this' doctrine is, that the libel was in the order and course of proceedings in the Parliament, which is a court. The above case does certainly put the example of a privileged communication more broadly than it has béen done by other authorities, and it seems difficult, from its very coiriprehensive language, to avoid the conclusion, that there might be instances of privilege which could not be reached even by the clearest proof of express malice^ The point, however, appearing to be ruled by that case, is so much in conflict with the current of authorities going to maintain the .position that express malice cannot be shielded by •any judicial forms, that tire weight and number of these authorities should not, it is. thought, be controlled and even destroyed by the influence of a single and seemingly anomalous decision. The decision of Lake
 
 v.
 
 King should rather yield to the concurring opinions of numerous and enlightened minds; resting as they do upon obvious principles of reason and . justice. The exposition of the English law of libel given by Chancellor Kent iri the second volume of his Commentaries, part 4th, p. 22, we regard as strictly coincident with reason as it is with the modern adjudications of the courts. That law is stated by Chancellor Kent, citing particularly the authority of Best, J., in the case of Fairman
 
 v.
 
 Ives,
 
 5
 
 Barn. & Ald. 642, to the • following effect: “That petitions to the king, or to parliament, or to the secretary of war, for redress of any grievance, are privilegéd communications, and not actionable libels, provided the privilege is not abused. But if it appear that the communication was-made maliciously, and without probable cause, the pretext under which it was made aggravates the case, and an action lies.” It is the undoubted right we know of every citizen to institute criminal prosecutions, or to exhibit criminal. charges before the courts of the country; and such prosecutions are as much the regular. and appropriate modes of proceeding as . the petition is the appropriate proceeding before parliament — yet it never was denied, that a prosecution with malice, and without probable cause, was just foundation' of an action, though such prosecution was instituted in the appropriate court, and carried on with
 
 every
 
 formality known to the law. The parliament, it is said, is a. court, and it is difficult to perceive how malicious and groundless prosecutions before it can be placed on a ground of greater impunity than they can occupy in another appropriate forum. The case of Lake
 
 v.
 
 King, therefore, interpreted by the known principles of the law of libel, would extend the'privilege of the-defendant rio farther than to require as to him proof of actual malice. A . different interpretation would establish, as to such a case, a rule that is perfectly anomalous, and
 
 *290
 
 depending upon no reason which is applicable to other cases of privilege.
 

 By able judges of our own country, the law of libel has been ex-.. pounded in perfect .concurrence with the doctrine given by Chancellor Kent. Thus, in the case of the Commonwealth
 
 v.
 
 Clap, 4 Mass. Rep. 169, it is said by Parsons, C. J., “ that a man may apply by complaint to the legislature to remove an. unworthy- officer; and if, the complaint be. true, and made with honest intentions df giving information, and’not maliciously, or with intent to defame, the com- • plaint will not be-a libel. And when any-man shall consent to be a candidate)for a public office conferred by the election of the people, he must be considered as putting his: character in issue, so far as it may respect his fitness and qualifications for the office; and publications of the truth on this subject, with the honest intention of informing the peoplé, are not a libel; for it would be unreasonable to conclude, that the publication
 
 of
 
 truths, which it is the-intérest of -the people to know, should be an offence against their laws.. For the -same reason, the publication of falsehood and calumny against public officers, or candidates for .public- offices, is an offence dangerous to the people, and deserves punishment, because the people may be deceived, and reject- their best citizens, to their great injury, and, it may be,.to the loss of their liberties. The publication of a libel maliciously-, and; with intent to defame, whether it be true or not, is clearly, an offence against law on sound principles, &c.”'
 

 - In the case, of Bodwell v. Osgood, 3 Pick. Rep. 379, it was ruled, that a false complaint, made with express malice, or without probable cause, to a body having competent authority to redress the grievance complained of, may be the subject of. an action for.a libel, and the question of malice is-to be determined by the jury. The court in this last case say, p. 384,
 
 “
 
 It maybe admitted, that if the defendant had proceeded with honest intentions, believing the accusation, to be true, although in fact it Vas not, he would be entitled to protection, and that the occasion of the publication would prevent the.legal inference of malice.” The court proceed further to' remark, p. 385':
 
 “
 
 It has been argued that the jury should have been instructed, that, the application- to. a tribunal competent to redress the supposed grievance was
 
 prima jfacie' .evidence
 
 that the -defendant acted fairly, and that.the burden of prqof was.bn the plaintiff to remove the presumption. The judge was not requested thus to instruct the jury. He did, however,.instruct them that the burden of proof was on the plaintiff to satisfy them that the libel was malicious, and-that if the plaintiff did not prove the malice beyond any reasonable doubt, that doubt should be in. favour-of the defendant.”
 

 We have thus taken a view of'the authorities wtach-treat of. the doctrines of slander and libel, and have considered those authorities
 
 *291
 
 particularly with reference to the distinction they establish between ordinary instances of slander, written and unwritten, and those which have been styled privileged communications; the peculiar character of which is said to. exempt them from inferences which the law has created with respect to those cases that do not partake of that character. Our examination, extended as it may seem to have been, has been called for by the importance of a subject most intimately connected with the rights and happiness of individuals, as it is with the quiet and good order of society. The investigation has conducted us to the following conclusions, which we propound as the law applicable thereto. 1. That every publication, either by writing, printing, or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is
 
 prima facie
 
 a libel, and implies malice in the author and publisher towards the person concerning whom such publication is made.' Proof of malice, therefore, in the cases just- described, can never •b.e required of the party complaining beyond the proof of the publication itself: justification, excuse, or extenuation, if either can be shown, must proceed’from the defendant. 2. That the description .of cases recognised as privileged communications, must be understood as exceptions to this rule, and as being founded Upon some apparently recognised obligation or motive, legal, moral, or social, which may fairly be presumed to have led to the publication, and therefore
 
 prima facie
 
 relieves it from that just implication from, which-the general rule of the law is deduced. The rule of evidence, as to such cases, is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parlies, and to require of him to bring home to the defendant the existence of malice as the true motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, ¡however wicked, however express, under the protection of legal forms. We conclude then that malice may be .proved, though alleged to have existed in the • proceedings before a court, or legislative body,'or any other tribunal or authority, ajthough such court, legislative body, or other tribunal, may have been the appropriate authority for redressing the grievance' represented to it; and '".that proof of express malice in any written publication, petition, or proceeding, addressed to such tribunal, will render that publication, petition, or proceeding, libellous in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that in every case of a proceeding like those just enumerated, falsehood and the absence of probable cause will amount to proof of malice.
 

 The next and the only remaining question necessary to be considered in these cases, is that which relates to the rulings of the
 
 *292
 
 court below excluding the publication declared upon as a libel from going to the jury in connection with other evidence to establish the existence of malice. We forbear any remark upon the intrinsic character* of the injury complained of, or upon the extent to which it may have been made out. These are matters not properly before us. But if the publication declared upon was to be regarded as an instance of privileged publications, malice was an indispensable characteristic which the plaintiff would' have been bound to establish in relation to it. The jury, and the jury, alone, were to determine whether this malice did or did not mark the publication. It would appear difficult
 
 u priori
 
 to imagine how it would be possible to appreciate a fact whilst that fact was kept entirely concealed and out of view.- This question, however, need not at the present time be reasoned by the court; it has, by numerous adjudications, been placed beyond doubt or controversy. Indeed, in the very many cases that are applicable to this question, they almost without an' exception concur in the rule, that the question of malice is to be submitted to the jury upon the face of the libel or publication itself. We refer for this position, to Wright
 
 v.
 
 Woodgate, 2 Crompton, Mees. & Ros. 573 ; to Fairman
 
 v.
 
 Ives, 5 Barn. & Ald. 642; Robinson
 
 v.
 
 May, 2 Smith, 3
 
 ;
 
 Flint
 
 v.
 
 Pike, 4 Barn. & Cres. 484, per Littledale, J.; Ib. 247, Bromage
 
 v.
 
 Prosser; Blake
 
 v.
 
 Pilford, 1 Mood. & Rob. 198 ; Parmeter
 
 v.
 
 Coupland, 6 Mees. & Welby, 105; Thomson
 
 v.
 
 Shackell, 1 Moo. Mal. 187, Other cases might.be adduced to the same point.
 

 Upon the whole we consider the opinion of the Circuit Court, in the several instructions given by it in these cases, to be erroneous. We therefore adjudge that its-decision-be reversed; that .these causes be remanded to the said court, and that a
 
 venire facias de novo
 
 be awarded to try them in conformity with the principles herein laid' down.