## BAILEY *v.* HOLLAND.

LIBEL; MALICE; PRIVILEGED COMMUNICATIONS.

1. Any published writing that imputes criminal or dishonest conduct to another or that tends to disgrace him and bring him into hatred, contempt or ridicule, is a libel; and where it does not appear that such statement or charge is true or has been justifiably made, malice will be presumed from its utterance.
2. In order that a communication may be privileged in the law of libel, not only the party making the communication but the person addressed must have an interest in the matter communicated.

No. 483. Submitted October 17, 1895. Decided November 4, 1895.

HEARING on an appeal by the defendant from a judgment on verdict in an action for libel. *Affirmed.*

The COURT in its opinion stated the case as follows :

This is an appeal from a judgment in an action for libel brought by the appellee, Milton M. Holland, as plaintiff

below, against the appellant, Leonard C. Bailey, and founded
on the following letter:

"WASHINGTON, D. C., June, 8, 1891.
" Hon. John Sherman, Mansfield, Ohio.

"SIR: I trust you will pardon the liberty I take in ad-
dressing you on the subject which this letter will present, and
that you will be able to see in my motive an ample excuse
for my action. I address you as the political and personal
friend of a gentleman towards whom I have myself until
quite recently felt a strong personal and business friend-
ship. I refer to Mr. Milton M. Holland, of this city. As
is well known to you, the colored people throughout this
country, are, through the operations of race and prejudice
against them, seriously handicapped in every effort they
made to secure business training and to carry on business
enterprises. Washington is, most decidedly, no exception
to this general rule, notwithstanding the fact that intelligent
and capable young colored men and women are found in
larger numbers here than in any other city of the United
States ; and, with a view solely to organizing and putting
on foot some business enterprise that would open up an
avenue of usefulness to our young men and help demon-
strate the negroes' capacity for business by giving them
proper inducements to save their money, a number of col-
ored men established here some time ago the Capital Sav-
ings Bank. Mr. Holland was foremost among them. He
labored with unquestioned zeal in organizing the bank and
in bringing to its support many persons whose support
might otherwise not have been secured. As an evidence
of our appreciation of his labors in this direction, we hon-
ored him with the presidency of the bank, and tried to fol-
low and sustain him in every effort he made to build it up,
but, like all strong-minded men, Mr. Holland found that
his will and his methods were not always the will and meth-
ods of his associates. Naturally enough, therefore, antag-
onism were developed, and he found himself in the minority.
He resigned from the presidency of the bank, withdrew

his stock, and, not content with that, he is now evidently working just as earnestly against the bank as he ever worked for it. He is doing this merely because his individual whims were not respected and his personal dictations not followed. He is busily endeavoring to pull down the entire institution by circulating unfounded rumors regarding its condition, creating false and malicious impressions concerning its business methods, and inducing persons who have confided in the bank heretofore to withdraw their confidence and support. If his administration of the affairs of the bank had been upright and honorable in every particular, free from a selfish desire of personal gain, and with a conscientious regard for the best interests of the bank, a mere difference of opinion as to methods would not have led him to his present attitude; but it was certainly otherwise, and his present actions have called out the stern condemnation of his late associates in the management of the bank. As already intimated in this letter, this bank is essentially a race institution, backed up by the pride and the resources of our race in this community, and as an officer and stockholder in the company I feel it to be my bounden duty to make a public declaration of Mr. Holland's treachery to us, and to show that he is not a friend to our race if he persists in an opposition to an interest of so much vital importance to us. I propose personally to lay this whole matter before the Hon. Secretary of the U. S. Treasury, and to ask whether, under the circumstances of the case, Mr. Holland ought to be permitted to retain his position in that department, as representing the negro race, when in another field of labor he is so industriously working against their chief interests; and I have written this letter to you, Senator Sherman, because I know that Mr. Holland owes his political preferment to your friendly interest in him and because I wanted you to know beforehand and from the proper source of this step that is about to be taken and the exact reason for it.

" I wish to assure you that my views are concurred in

and my action will be sustained by a number of prominent and substantial colored men in this city.

" I am, very respectfully,

" L. C. BAILEY,"

" 1108 18th St. N. W."

Upon receipt of this letter, Hon. John Sherman, then Senator, of Ohio, sent it to the appellee, who at once instituted this suit.

Defendant pleaded in justification the truth of the charges made in the letter, to the effect that plaintiff had resigned the presidency of the bank and withdrawn his stock; that he had induced others to withdraw stock to the amount of $8,000; that he was engaged in " pulling down " the institution, and had circulated untrue rumors regarding its condition for the purpose of preventing others from taking stock, and had deterred them from doing so until an expert had examined the books and made a favorable report, at the expense of $100 to the bank.

The plaintiff offered proof tending to show that he was of good character and standing, and that at and before the time the letter was written he was a clerk in the Second Auditor's office of the United States Treasury Department. He also gave evidence tending to show that he had been connected with said savings bank from September, 1888, to May, 1891, as its president; that after his resignation he made no effort to pull down the credit of the bank, and made no effort to induce any one to withdraw therefrom. On his retirement from the presidency of the bank, the board of directors, defendant being one of the number, personally signed and delivered to him a testimonial to his efficient and honest discharge of his duties, and expressing great regret at his loss, &c. There was a complete failure on the part of the defendant to prove the truth of the charges made in the letter and reiterated in the plea.

The court instructed the jury that if the charges made in the letter were found to be untrue, it was libellous in law, and malice in its utterance would be presumed. Then,

after explaining the charges made in said letter and referring to the proof concerning the same, he further told the jury : "As respects malice, and the motive with which the letter complained of was written by the defendant, you may look to the terms of the letter itself, the conditions under which it was written, and all the surrounding circumstances." After referring to the defence as to the motive with which the letter was written, the jury were further told : "If, however, you find that the object of the letter was not such as is claimed by the defendant, but was merely a defamation of the plaintiff and intended to bring him in bad repute with the person to whom the letter was written, and further find that the matters therein stated of the plaintiff are untrue, then the letter is libellous, and the motive of the defendant in writing it such as the law describes as malicious."

After excepting to the charge, the defendant asked the court to instruct the jury that the letter was not libellous in its statements and plaintiff could not recover thereon ; and further, that if the letter was written concerning defendant's own affairs and matters in which he was interested, it was a privileged communication and plaintiff could not recover without proof of malice. These prayers were refused, and the case was given to the jury, who found for the plaintiff and assessed his damages in the sum of $1,000.

*Messrs., Cook & Sutherland* and *Mr. H. O. Claughton* for the appellant :

1. The writing complained of here is not defamatory *per se*, and whether defamatory at all or not depends upon the meaning of the language, which language, being capable of several constructions, it was the function of the jury to say from the evidence, in what sense the writer intended it should be understood.

2. The writing complained of was privileged. There are three classes of occasions of privilege. First, when the writer and the addressed are both interested. Second, when

the party addressed is interested and the writer is not. Third, when the writer is interested and the party addressed is not. In the case of *White* v. *Nicholls*, 3 How. 266, the Supreme Court gives the definition of privilege of the first class thus: "Whenever the author or publisher of an alleged slander acted in a *bona fide* discharge of a public or private duty, or in the prosecution of his own rights or interests." The Supreme Court of New York has followed the Supreme Court of the United States. *Klinck* v. *Colby*, 46 N. Y. 427; *Lewis* v. *Chapman*, 16 N. Y. 369.

*Mr. A. G. Riddle* and *Mr. Henry E. Davis* for the appellee cited:

Cooley on Torts, 211 *et seq.; Count Joannes* v. *Bennett*, 5 Allen, 169; *Todd* v. *Hawkins*, 8 C. & P. 88; *Davis* v. *Snead*, 2 Q. B. 608; *Picton* v. *Jackman*, 4 C. & P. 257; *Bodwell* v. *Osgood*, 3 Pick. 379; *Hagan* v. *Hendry*, 18 Md. 177; *Maurice* v. *Wardon*, 54 Md. 233; *McBee's Case*, 47 Md. 403.

Mr. Justice SHEPARD delivered the opinion of the Court:

Any published writing that imputes criminal or dishonest conduct to another, or that tends to disgrace him and bring him into hatred, contempt or ridicule, is a libel. *White* v. *Nicholls*, 3 How. 266; *Hagan* v. *Hendry*, 18 Md. 177, 191; Townshend on Slander and Libel, sec. 176 *et seq.;* 13 Am. & Eng. Ency. Law, pp. 294–300. Where it does not appear that such statements or charges are true, or have been justifiably made, malice is presumed from their utterance. The malice consists in doing intentionally, and without justification, that which must work injury to another.

Tested by the foregoing rules, the letter of the defendant to Senator Sherman was *per se* libellous, and the court did not err, as complained of, either in giving or refusing instructions on that point. The letter charges the plaintiff, in plain terms, with treachery to his race and his former friends

and associates in the bank, with malicious efforts to injure and destroy the business of the banking concern by circulating unfounded rumors and creating false impressions concerning its business methods, and with dishonorable conduct and dishonesty in the administration of its affairs while he was its president. It is a studied, formal and direct attack upon the business methods, the moral character, and the reputation of the plaintiff, calculated to degrade him in society, to expose him to disgrace, and, in particular, to bring upon him the contempt, ill will and hatred of his own race. The letter speaks for itself, however, and need not be further discussed.

2. Appellant contends that this letter was what is called in the law of libel a privileged communication, and therefore malice could not be presumed of its statements as matter of law, but must be proved and found as a fact by the jury. This question has been exhaustively and most learnedly discussed by the Supreme Court of the United States in a case the doctrine of which has never been questioned. *White* v. *Nicholls*, 3 How. 266, 286. Among the definitions of privileged communications given in the opinion in that case, the only one at all applicable to the facts of this case is the following: "Whenever the author and publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral, or in the prosecution of his own rights or interests. For example, words spoken in confidence and friendship as a caution ; or a letter written confidentially to persons who employed A as a solicitor, conveying charges injurious to his professional character in the management of certain affairs which they had intrusted to him, and in which the writer of the letter was also interested."

In a well considered case in another court of very high authority, the following rule is laid down as "sanctioned by the highest judicial authority :" "A communication made *bona fide* upon any subject-matter in which the party communicating has an interest, or in reference to which he has

a duty to perform, is privileged, if made to a person having a corresponding interest or duty, although it contains defamatory matter which, without such privilege, would be libellous and actionable." *Count Joannes* v. *Bennett*, 5 Allen, 169, 170.

Both by the terms in which the rule is stated in the last case, and the illustrations of the rule given in *White* v. *Nicholls*, it is made plain that it is not sufficient that the party making the communication shall have an interest in the matter communicated. The person addressed must have an interest to be affected also, or must occupy such an attitude towards the matter or the party making the communication as to render it a matter of legal or moral duty.

Defendant's case is lacking in this essential particular. No doubt the defendant had a pecuniary interest in the business of the bank, and as an officer of the institution had a duty to perform in the protection of its business interests in every legitimate way.

Although the letter, upon its face, would seem more in the nature of an attempt to alienate a powerful friend of the plaintiff preparatory to an effort to have him turned out of an official position held by appointment, still, to grant that it was written in the supposed interest of the bank and of the defendant will not help his case. Senator Sherman, to whom the letter was addressed, had no interest whatever in the bank or its business, and it was not pretended that he was expected to have any. The defendant owed him no duty in the premises, legal or moral. What he may have considered his duty does not render his letter any the less a libel. He must be presumed to have intended an injury to the plaintiff.

The court did not err in so charging the jury, and *the judgment must be affirmed, with costs to the appellee. It is so ordered.*