THE PEOPLE *v.* POLO.

APPEAL from the District Court of Humacao.

No. 143.—Decided November 25, 1908.

CRIMINAL LAW — LIBEL — PRIVILEGED COMMUNICATION — WRITTEN COMPLAINT AGAINST A MUNICIPAL JUDGE.—In accordance with the laws in force in Porto Rico, a written communication addressed by two private citizens to the Attorney General of Porto Rico, making charges against the official conduct of a municipal judge, denouncing his conduct as unbecoming his position and prejudicial to the administration of justice, requesting an investigation and offering to present proof of the allegations, is a privileged communication.

ID.—LIBEL—PRIVILEGED COMMUNICATION—BURDEN OF PROOF—MALICE.—In libel cases, where a privileged communication is involved, the burden of proof shifts, and instead of malice being presumed against the defendants, from the use of libelous words, it must be proved by the prosecution by means of other evidence than the mere libelous document itself.

The facts are stated in the opinion.

*Mr. Manuel Tous Soto* for appellants.

*Mr. Rossy, fiscal,* for respondent.

MR. JUSTICE MACLEARY delivered the opinion of the court.

This prosecution originated in the municipal court of Caguas from which an appeal was taken to the District Court of Humacao, and the trial was therein had on the 28th of March, 1908.

The attorney for the accused made a motion to dismiss the case because the facts alleged did not constitute an offense. This motion was opposed by the *fiscal* and denied by the court. After the submission of proof the attorney for the defendants again made a motion asking the dismissal of the case for want of proof sufficient to sustain the accusation made against them. This also was opposed by the *fiscal* and overruled by the court. The court thereupon found the defendants guilty of libel and sentenced Luis Polo García to 10 month's imprisonment and $200 fine and the payment of the costs, and also sentenced Adolfo Hernández Dueño to seven months imprisonment and $200 fine and the payment of the costs, and that the imprisonment should be passed in the district jail of Humacao.

From this judgment both defendants appealed to this court, giving the necessary bond. This appeal is based upon allegations that the facts complained of lack the necessary elements to constitute an offense for which the accused can be prosecuted, in accordance with the principle established in paragraph three of article 153 of the Code of Criminal Procedure.

A statement of the case and a bill of exceptions were duly presented and approved by the district court and certified by the secretary of the said court on the 9th of June, 1908. The record was filed in this court on the 24th of June of the same year. At the trial, had in this court on the 13th of October, both parties appeared by counsel, and filed briefs.

The writing complained as libelous was in the form of a letter addressed by the defendants to the Attorney General

of Porto Rico. The portions complained of as libelous read as follows:

"It is a long time, sir, that we are here destitute of justice and left to the caprice of an ignorant judge, without legal knowledge, who uses the administration of justice as an easy means of trading, and we can, of course, assure you that we are absolutely deprived of protection."

And further it says:

"We beg that the department be good enough to direct that a prompt and thorough investigation should be made, in which we shall have occasion to prove the facts which we now denounce and many others of a more serious character as they carry with them criminal liability, with the purpose of securing for this community a moral administration of justice not subject to the financial influences which at present govern every act of the said Judge Vergne de la Concha, whose pernicious conduct is a danger to the continuance of good government in this Island."

By section 243 of the Penal Code a libel is defined as follows:

"A libel is a malicious defamation, expressed either by writing, printing or by signs or pictures, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."

By section 244 the punishment is prescribed to be a fine not exceeding $5,000 or imprisonment in jail not exceeding one year. Section 245 says that:

"An injurious publication is presumed to have been malicious if no justifiable motive for making it is shown."

And by the following section a defendant is allowed to give in evidence the truth of the publication as a justification.

The following sections enter into particulars in regard to the libelous publications, and section 251 reads as follows:

"A communication made to a person interested, in the communication, by one who was also interested or who stood in such relation to the former as to afford a reasonable ground for supposing his motive innocent, is not presumed to be malicious, and is a privileged communication."

In regard to provileged communications it will be observed that our statute condenses the law as understood generally on the Continent. And indeed a communication like the one on which this prosecution is based would not have been held libelous *per se* under the Spanish law, as it was administered in this Island prior to the establishment of American sovereignty here. In a case decided by the Supreme Court of Spain on the 9th of December, 1874, the opinion says:

"From this decision the prosecuting attorney took an appeal for infringement of the law, stating that articles 472, 473 and 482 of the Penal Code had been violated, as the Penal Code is applicable to individuals, but not to offenses against an authority in the exercise of his functions, it being a mistake to think that in order to prosecute said offenses, it is necessary to show the authorization alleged by the trial court, especially when they were not committed during the hearing; for a statement addressed to an authority acting as president of a court could not be considered as such. But in spite of these allegations, the Supreme Court dismissed the appeal on the ground that Doña María de la Concepción Navarro, when complaining to the president of the appellate court of the conduct pursued by the Judge of First Instance of Las Palmas, Don Domingo Fons, availed herself of a legal right specified in article 98 of the Constitution of the State and in No. 15 of article 584 of the Organic Law concerning the judicial power; and the judge of first instance ought to have confined himself to making a report to the president of the appellate court in justification of his acts, and when proceeding therefore to prosecute a case because he considered as injurious the phrases applied to him in the complaint, he acted improperly and with notorious incompetence, because he could not and ought not to arrogate to himself the faculty of trying a case which was pending before his superior authority and in

which he was made a defendant; and finally, that the trial court
by annulling the proceeding improperly instituted by the judge of
first instance, Don Domingo Fons, did not establish a right, inasmuch
as the question was left intact, and, therefore, did not commit any
error nor did it violate any of the articles of the Code cited by the
prosecuting attorney.''

Thirty years previously, in 1845, the Supreme Court of
the United States had clearly defined what constituted privi-
leged communications and where the burden of proving mal-
ice in such writings lay, and how such proof should be made.
A leading case on this subject is that of *White* v. *Nichols*, 44
U. S. (3 How), 266, in which Mr. Justice Daniel delivered the
opinion of the court, from which we make two copious extracts
to wit:

''The exceptions found in the treatises and decisions before alluded
to, in regard to priviledged communications, are such as the following:
1. Whenever the author and publisher of the alleged slander acted in
the *bona fide* discharge of a public or private duty, legal or moral; or
in the prosecution of his own rights or interests   *   *   *   ;  2. Any-
thing said or written by a master in giving the character of a servant
who has been in his employment;   3. Words used in the course of a
legal or judicial proceeding, however hard they may bear upon the
party of whom they are used;   4. Publications duly made in the ordi-
nary mode of parliamentary proceedings.''   (44 U. S., 286 and 287.)

''The investigation has conducted us to the following conclusions,
which we propound as the law applicable thereto:   1. That every
publication, either by writing, printing or pictures, which charges
upon or imputes to any person that which renders him liable to pun-
ishment, or which is calculated to make him infamous, or odious, or
ridiculous, is *prima ficie* a libel, and implies malice in the author 'or
publisher towards the person concerning whom such publication is
made.   Proof of malice, therefore, in the cases just described, can
never be required of the party complaining beyond the proof of the
publication itself: Justification, excuse, or extenuation, if either can
be shown, must proceed from the defendant;   2. That the description
of cases recognized as privileged communications, must be understood
as exceptions to this rule, and as being founded upon some apparently
recognized obligation or motive, legal, moral, or  social, which may
fairly be presumed to have led to the publication, and therefore *prima*

*facie* relieves it from that just implication from which the general rule of the law is deduced. The rule of evidence, as to such cases, is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obilgations and situations of the parties, and to require of him to bring home to the defendant the existence of malice as the motive of his conduct. Beyond this extent no presumption can be permitted to operate, much less be made to sanctify the indulgence of malice, however wicked, however express, under the protection of legal forms. We conclude then that malice may be proved, though alleged to have existed in the proceedings before a court or legislative body, or any other tribunal or authority, may have been the appropriate authority for redressing the grievance represented to it; and that proof of express malice in any written publication, petition, or proceeding, addressed to such tribunal, will render that publication, petition, or proceeding, libelous in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that in every case of a proceeding like those just enumerated, falsehood and the absence of probable cause will amount to proof of malice." (44 U. S., 290 and 291.)

Reference may also be made to the following additional authorities which follow the leading case, viz: *Gardner* v. *Anderson,* 9 Fed. Cases; case No. 5220; *Elam* v. *Badger,* 23 Ill., 448.

We have had occasion in a former case to construe section 251 of our Penal Code and to hold that where a party to whom the letter is addressed comes within the terms of the said section of the statutes, the burden of proof shifts, and instead of malice being presumed against the defendants from the use of libelous words, it must be proven by the prosecution by means of other evidence than the mere libelous document itself. (See civil case of *Jiménez Sicardó* v. *Díaz Caneja,* decided on the 30th of January, 1908. *Ante,* p. 9.)

The question then arises, is the Attorney General of Porto Rico interested in such a communication as that complained of with the general public and consequently with the accused, and does he stand in such a relation to the accused as to afford a reasonable ground for supposing their motive in writing the

letter to be innocent? If so, then the letter can no longer be presumed to be considered as libelous *per se;* and malice must be proved by the prosecuting officer before a conviction can be had. Of course, malice can be proved by attending circumstances and by any evidence which throws light on the motives of the writers of the objectionable communication, but it must be some evidence outside of the contents of the writing itself, and additional thereto.

In order to arrive at the fair decision in this question, it is necessary to examine the various duties imposed upon the Attoney General by the Statutes of Porto Rico. He is constituted the administrative head of the Department of Justice, and, as such, has a general executory power and control over the various officers connected with the department, including municipal judges throughout the Island. Reference may be had in this connection to chapter three of the Political Code. (See Rev. Stat. and Codes of Porto Rico, pp. 322 to 326 inclusive.)

By section 74 of said Political Code an especial duty is imposed upon the Attorney General, which is defined as follows:

"The Attorney General shall prepare and present to the Supreme Court, through the *fiscal* thereof, articles of impeachment against any judge or *fiscal* of an insular court (except a Justice of the Supreme Court), against whom he may receive charges of corruption or malfeasance in office or of immoral conduct unbecoming his position, when the charges, in his judgment, are well founded and are of a character requiring such action; in case of official misconduct on the part of any other officer or employe of the Insular Government, he shall file an information before the proper tribunal and prosecute the same. He shall direct the prosecution of such cases either in person or through the Assistant Attorney General, or in case of necessity may appoint special counsel."

It would seem from a perusal of the foregoing section that it is especially made his duty to receive charges of corruption of malfeasance in office or of immoral conduct unbecoming his

position against any district or inferior judge, or *fiscal* of an insular court, and when the charges are, in his judgment, well founded, he is required to file an information before the proper tribunal and to prosecute the same. The section does not state who shall make the charges which are to be received by the Attorney General, but the presumption is ineludible that the charges can be made by any person cognizant of the facts on which they are based, and it seems to us that it is the duty of a good citizen who knows of any malfeasance in office on the part of a municipal judge or immoral conduct unbecoming his position, to communicate such knowledge to the proper officer, who in this case, is the Attorney General of Porto Rico. It would be very little use to provide by the law that the Attorney General should receive charges against an officer and at the same time prohibit any person from making such a charge under penalty of fine or imprisonment.

When the letter in question was received by the Attorney General, he thought best to transmit it to the municipal judge against whom the complaint was made. That probably was a wise proceeding. At any rate we have nothing to say in condemnation of it. It was intended for the benefit of the judicial officer whose conduct he was investigating. Whether or not the municipal judge replied to the charges, by a defense filed with the Attorney General, does not appear from the record. But he instituted a prosecution against the authors of the letter for defamatory libel, and they were convicted in the municipal court, and again on appeal in the district court; and that conviction stands before us now for review.

There is no doubt that the writing complained of is a libel, if it was published with malicious motive, and this could be proved by the document itself unless the letter is shown to be a privileged communication. In the latter case malice must be proven by extrinsic testimony. The evidence before this court in the transcript, taken altogether and carefully compared and sifted, fails to show any malicious motive on the part of the accused. Considering the writing itself as pre-

sented, being a letter from two citizens of Porto Rico, presumed to be of good reputation, to the Attorney General in regard to the official conduct of a municipal judge, charging that conduct to be unbecoming his position and prejudicial to the administration of justice, requesting an investigation and offering to present proof of the allegations, we must regard it as a privileged communication. Such being the case, no conviction based solely upon it, although its publication is admitted, can be sustained in this court. Then, the alleged libel, for which prosecution of these defendants was had, being considered as a privileged communication under the laws of Porto Rico, the judgment in this case must be reversed and the cause dismissed.

*Reversèd.*

Justices Hernández, Figueras and Wolf concurred.

Mr. Chief Justice Quiñones did not take part in the decision of this case.