### VICTOR YECKER V. THE STATE.

No. 21597, Delivered May 28, 1941.
Rehearing Denied June 27, 1941.

The opinion states the case.

*Schweppe & Schweppe,* of San Antonio, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

A fine of $500.00 was assessed against Victor Yecker in Bexar County on a charge of libel, from which he appeals.

The undisputed facts of this case show that during the year 1940 the appellant was a candidate for constable, precinct number two, Bexar County, and had an opponent whose name was O. B. Jack Harper. During the campaign some of appellant's supporters had told appellant that Jack Harper had a bad reputation and intimated that he had an unfavorable court record. Appellant examined the records of the justice and city courts where he found that a number of charges had been filed and fines against a man named Jack Harper. It appears that he prepared a list of these which he exhibited to some people and that he was told that he did not yet have the record, to look further. He then employed an experienced investigator who went to the minutes of the district court and, upon search,

found a judgment of conviction with a penitentiary sentence for burglary with intent to commit theft against a party alleged to be Jack Harper, alias Joe Jones. Upon informing appellant of his find they went together and examined the record, which they copied correctly as it is found there and caused to have printed on a circular for distribution in the campaign with the intention of informing the people as to the record of his opponent. The cautious printer declined to print the circular without someone's name to it an, as alleged in the indictment, the circular began with these words:

"The following is the record of Jack Harper, who is also known as Joe Jones, as it appears of record in Volume 5, page 227 of the 98th Judicial Criminal District Court of Bexar County, Texas." This was followed by an exact copy of a judgment of conviction on the 10th day of April, 1929, of a party named Jack Harper, alias Joe Jones. Following this there was printed below and at the bottom part of the circular the following:

"Vote for Victor Yecker for constable, precinct No. two, Bexar County, Texas."

The indictment properly alleges that this statement was published in the circular form above set out and that it "intended to convey the idea ***** and did convey the idea to the voters of said precinct number two that the said O. B. Harper, also known as Jack Harper ***** was the said Jack Harper who had been convicted ***** of the penal offense of burglary and burglary of a private residence." The proof in the case, including the evidence of appellant, amply sustains the allegation and the conclusion that he intended to and did convey the idea to the public that his opponent in the campaign was the same person as the one named in the judgment of conviction. He had a thousand of these circulars printed and had some of them distributed. The evidence shows without contradiction that on the day before and on the morning of the election they appeared at a number of public places. The record contains pictures of a number of these circulars, tacked immediately below placards bearing the picture and advertisement of O. B. Jack Harper as a candidate. The public could not misunderstand the intention of the circular and there is no material issue of fact under dispute in the record.

It is the first contention of appellant in this appeal that the allegations failed to contain the innuendo averments sufficient

to show that the appellant intended the circular to apply to his opponent. We cannot conceive of anything which needed to be added either to the averments to the indictment or to the evidence in the case, and appellant has not pointed out any language which was left out and that would be necessary or more specific to complete such allegations. Contradicting this, and wholly inconsistent with it, is the further contention that appellant made an honest mistake of fact as contemplated and provided under Article 41 of the Penal Code. This question has given us no little concern, as did also the further contention that it is not libelous to publish a true statement as provided in Section 6 of Article 1284 of the Penal Code. We will consider the latter first.

If the judgment of conviction as contained in the circulars had been published and circulated without any prelude or concluding statement, appellant's argument that he was not guilty of libel by publishing it would be much more forceful, but the thing that was published was not only the judgment, but the prelude hereinabove quoted. Appellant says that the judgment is, "The record of Jack Harper." He intended to and did apply it to the prosecuting witness in this case and the public so understood it. According to his own statement, one friend advised him that it would do him more harm in the race than it would good and he, for that reason, said that he destroyed the rest of the circulars and quit having them distributed. The statement in the prelude, "who is also known as Joe Jones," is an assertion made and vouched for by appellant in publishing the circular. It is not a limitation as argued. To merely make an assertion of a candidate for office that he goes under another name at times is, unquestionably, a harmful charge in the minds of all of those who believe it.

Appellant makes the contention that he acted in good faith in publishing the circular; that he felt it was information the public was entitled to have, but when warned by a friend, whose judgment he respected, that it would injure him instead of his opponent, he withdrew it from the public. Thus it appears he did it for his own benefit in the campaign and to the injury of Jack Harper, his opponent. It is true that the public has an interest beyond and above that of the individual involved in knowing the character as well as the qualification and fitness of a candidate for public office. This is the reason for Section 6, Article 1284 of the Penal Code.

It has been held that where the motive of the publisher of a false charge acted in the interest of the public, he may excuse his act by showing he had probable cause for believing the charge to be true. Yet, it seems that the same courts will not always agree that one acting for his own interest may be permitted to relieve himself of liability by proving the truth of the things published. Palmer v. Concord, 97 Am. Dec. 605; Commonwealth v. Blanding, 15 Am. Dec. 214; Commonwealth v. Clap, 3 Am. Dec. 212. Such decisions flowing from the common law rules cannot be utilized by us save, probably, to interpret the statutory enactments by which we are bound, if they may, in fact, do so.

Anyone familiar with a candidate's fitness or unfitness has a public duty to inform the public of such, but he also owes the public the duty to fairly and truly investigate the facts and be in a position to vouch for them before he asserts them to the public. On this point appellant contends that he employed the best investigator that he knew and seeks for that reason to relieve himself of criminal responsibility. We have carefully examined the record on this point and it appears to the writer that the extent of the investigation made was to ascertain what the record said for the purpose of using it in behalf of appellant as a candidate for office. If he made any inquiry whatever to determine that the party named as Jack Harper, alias Joe Jones, was the same individual as the man who was opposing him for office, he has failed to put that fact in the record. This is the point with which we are concerned and is the crux of his defense, and the evidence is silent on it. Many names of the best men of our State may be duplicated on the criminal records, and a reckless use of such records with assertion that it was "the record" of such good men would be as injurious as would a false statement regarding such individuals. As applied to them it is just as false as if it had not been found on some record somewhere. The duty, therefore, rests as definitely upon the person publishing a derogatory statement to investigate and learn if the facts are applied to this individual as it is the truth of the facts asserted as a matter of record.

Unquestionably, appellant thought the record which he had published applied to his opponent. A rule announced by some courts says: "As in civil actions, a belief in the truth of the charge is not a defense in a criminal prosecution for libel if the publication is not shielded by any privilege." 33 Am. Jur. Sec. 319, page 299. See also State v. Hoskins, 80 N. W. 1063,

47 L. R. A. 223; 77 Am. St. Rep. 560. In civil actions it has been held that it is not necessary to show the defendant acted maliciously, but it is sufficient that he acted recklessly. (Layne v. Tribune Company, 86 A. L. R. 466. White v. Nicholls, 11 L. Ed. 591.) We see no reason why the rule should be more lenient or more forceful to relieve liability in a criminal case than in a civil action unless our legislature has, by statutory enactment, so decreed.

This brings us to a consideration of the application of the statutes involved. Section 3 of Article 1284 of the Penal Code is invoked by appellant. This says it is no libel "to publish any statement respecting any legislative or judicial proceedings, whether in fact true or not, unless in such statement a charge of corruption is made against some person active in a legislative or judicial capacity." Appellant having published a judicial decree now claims immunity from criminal prosecution. This returns us to the first proposition discussed. The prelude was no part of the judicial proceeding. The declaration that it was, "the record of Jack Harper, who is also known as Joe Jones," removes it without any question from the exception under this article. He might as well to have invoked Section 6 of said article which provides that it is not libel to make true statements of fact as to the integrity or other qualifications of a candidate for any office. Admittedly, the judicial proceeding did not apply to the Jack Harper in this case and as to him it was not a judicial proceeding and it was not a true statement.

The more troublesome question presented to us is the application of Article 41 of the Penal Code, which reads as follows:

"If a person laboring under a mistake as to a particular fact shall do an act which would otherwise be criminal he is guilty of no offense, but the mistake of fact which will excuse must be such that the person so acting under a mistake would have been excusable had his conjecture as to the fact been correct, and it must also be such mistake as does not arise from a want of proper care on the part of the person so acting."

From the record we must determine whether or not, (a) the record shows such a mistake as does not arise from a want of care on the part of appellant; or, (b) such a mistake of fact as is intended to be excused by this article. On the first part we have considered very carefully the record of the case, including the testimony of the appellant himself, to see whether

or not he used such care. While we have not found an extensive discussion of this subject in the decisions of this court, we do find it thoroughly settled in civil actions that a publication must have been honestly made in the belief of its truth and upon reasonable grounds for its belief after the exercise of such means to verify its truth as will be taken by a man of ordinary prudence under the same or similar circumstances. We know of no other rule by which to measure the investigation which should be required in a criminal action. The appellant says that before he published the circular he took a copy of the judgment to Joe Flores, an investigator, and "asked him to check it thoroughly and see whether it was correct." He does not say he asked him to find if it was the same person as his opponent. After Mr. Flores completed that work he saw him on the 22nd day of July and, "He took me upstairs in the district court and showed me that record that is in that circular, and it took him about thirty minutes to copy it." He then took the copy to the printer. *From that* he says he believed that the man named was the same man that was running against him. He tells of no inquiry made to ascertain if the record refers to the same Jack Harper who was his opponent. On cross examination he said that when a copy of the judgment was presented to him it showed it was Jack Harper, alias Joe Jones; that he noticed that and he just thought Mr. Flores would know what he was doing and that he was willing to accept his word and said further, "He took me up there and *without making any further investigation* he made a copy of the record *****." It was printed on the 23rd day of July, four days before the election, and circulated after that date.

From this it is perfectly clear that he made no investigation whatever to determine the important question in the case as to whether or not his opponent was the same man named in the record. He merely took the record as he found it. He published this information too late for the public to make such investigation before the election at which they must choose between the candidates for office. An ordinary prudent man would have made some kind or character of investigation. He made none, as the statute requires, and he knew of none that Mr. Flores made for him other than to find the record itself. We see no way by which he can claim the benefits of Article 41 of the Penal Code. This also disposes of the second question.

We find no further question in the record for consideration, and the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant still urges the same questions which were presented on original submission. They had our most careful consideration before the opinion affirming the judgment of the lower court was released.

Believing the result reached was proper under the facts, appellant's motion for rehearing is overruled.