David I. SMITH, Appellee,

v.

Robert McDONALD, Appellant.

No. 83–1509.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 11, 1984.

Decided June 28, 1984.

Bruce J. Ennis, Washington, D.C. (Geoffrey P. Miller, Kit Kinports, Ennis, Friedman, Bersoff & Ewing, Washington, D.C., McNeill Smith, H. Miles Foy, III, Smith, Moore, Smith, Schell & Hunter, Greensboro, on brief), for appellant.

Henry Blinder, Durham, N.C. (B.F. Wood, Latham, Wood & Abernathy, Graham, N.C., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Robert McDonald, asserting absolute privilege as a defense to an action for libel, appeals from an order denying his motion for judgment on the pleadings. We affirm.

McDonald sent two letters to the President of the United States, with copies to several people in his administration and members of Congress, suggesting that David I. Smith, who was seeking appointment as United States Attorney in North Carolina, was not fit for the position. After the President declined to appoint him, Smith filed a libel action in state court alleging that McDonald's letters to the President contained "false, slanderous, libelous, inflammatory, and derogatory statements" and that McDonald had composed the letters maliciously and with evil intent.

McDonald removed the action to federal court on the basis of diverse citizenship. He then filed a motion for judgment on the ground that his letters were absolutely privileged under the petition clause of the first amendment and the appointments and speech or debate clauses of the United States Constitution. The district court denied the motion, ruling that McDonald was

**428**

entitled only to the defense of qualified privilege.[1]

## I

The first issue, which Smith has raised by a motion to dismiss, is whether the district court's order is appealable.

■ In *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982); *Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979); and *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), interlocutory orders denying absolute immunity were appealable because they satisfied the criteria for collateral orders explained in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).[2] Tested by the principles explained in these cases, the order denying McDonald's defense of absolute immunity is appealable. It is a final disposition of a claimed right which is independent from the subject matter of the libel action. It resolves an issue that cannot be effectively reviewed after final judgment. Deferral would defeat McDonald's claim that he should not be put to trial, which is the initial protection of absolute privilege. Finally, the nature of the privilege that protects conduct arising under the petition clause presents a serious and unsettled question because other courts have concluded that a petitioner is entitled to absolute privilege.[3]

## II

The first amendment provides: "Congress shall make no law ... abridging ... the right of the people ... to petition the government for a redress of grievances." The issue raised by the motion for judgment on the pleadings is whether the petition clause affords McDonald a complete defense even if, as alleged in the complaint, his letters to the President were false and malicious. Resolution of this issue depends

on whether the petition clause creates an absolute privilege or a qualified privilege. The appointments and speech or debate clauses neither add to nor detract from McDonald's defense, and they are not germane to this issue.

In agreement with the district court, we conclude that this case is governed by *White v. Nicholls*, 44 U.S. (3 How.) 266, 11 L.Ed. 591 (1845). Nicholls and others wrote several letters to the President and to the Secretary of the Treasury protesting that White was unfit to serve as collector of customs. After White was replaced by one of his critics, he brought suit against his detractors, alleging that the letters to the President and the Secretary were false and maliciously composed. The trial court, however, ruled that the letters were inadmissible, and the jury consequently returned a verdict against White.

In the Supreme Court, the authors sought to uphold the trial court's exclusion of their letters on the ground that they were privileged communications. They argued that the letters were sent the President to obtain White's removal and that this was a "perfectly constitutional proceeding." 3 How. at 283.

The Supreme Court rejected the arguments advanced by the letter writers, reversed the judgment, and remanded the case for a new trial at which the letters should be admitted in evidence. Although the Court did not expressly advert to the first amendment, it recognized that the letters were privileged communications because they were petitions to an appropriate authority for redress of grievances. After canvassing English and American common law authorities, the Court held that the privilege arising from the right to petition was subject to "well-defined qualifications." 3 How. at 287. It went on to

---

1. *Smith v. McDonald*, 562 F.Supp. 829 (M.D.N.C. 1983).

2. *See also Chavez v. Singer*, 698 F.2d 420 (10th Cir.1983); *Forsyth v. Kleindienst*, 599 F.2d 1203 (3d Cir.1979); *Bever v. Gilbertson*, 724 F.2d 1083 (4th Cir.1984) (dicta).

3. *See, e.g., Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607 (8th Cir.1980); *Sherrard v. Hull*, 456 A.2d 59, 53 Md.App. 553 (1983); *Webb v. Fury*, 282 S.E.2d 28 (W.Va.1981).

explain that the presumption of malice that ordinarily attends the publication of defamatory words must give way to the privilege. Consequently, to recover damages, the complainant must prove that the petitioner acted with express malice. 3 How. at 291. The Court disapproved of an English case that held a false petition was not actionable. 3 How. at 289.

The Court's reasoning in *White v. Nicholls* rests on common law and not on an explicit construction of the petition clause. This, however, does not render it inappropriate for our consideration. The right to petition secured by the first amendment was known to the common law. But the amendment does not define the privilege that protects the exercise of this right. To determine the nature of this privilege recourse to the common law is proper. *See Ex Parte Grossman*, 267 U.S. 87, 108–09, 45 S.Ct. 332, 333, 69 L.Ed. 527 (1925). Furthermore, although *White v. Nicholls* dealt with an office holder, the Court said that the important issue under inquiry encompassed applicants for office. 3 How. at 285. The Court has declined to follow dicta in *White v. Nicholls* about the privilege accorded witnesses,[4] but the case has not been overruled.

■ Guided by principles the Court explained in *White v. Nicholls*, we conclude that the district court properly ruled that McDonald was not entitled to the defense of absolute privilege. *Accord Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983). The result we reach is consistent with *Bradley v. Computer Sciences Corp.*, 643 F.2d 1029, 1033 (4th Cir.1981), where we held that the petition clause affords a qualified privilege. In that case, however, we had no occasion to discuss whether the privilege was absolute. *See also Restatement (Second) of Torts* § 598 (1977).

McDonald cites a number of cases that support his claim of absolute privilege.[5] We are not persuaded by these authorities. They do not attempt to distinguish *White v. Nicholls* rationally. Instead, they rely primarily on *Eastern Railroad Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

The *Noerr-Pennington* defense rests on the proposition: "Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." 381 U.S. at 670, 85 S.Ct. at 1593. The defense is based on the Court's perception that Congress did not intend by enactment of antitrust legislation to bar concerted exercise of the right to petition. In reaching this conclusion, the Court found no occasion to depart from the principles of *White v. Nicholls* or even to cite that case. Indeed, the cases are not inconsistent. *White v. Nicholls* does not purport to bar the right to petition; instead, it clothes that right with significant protection.

*White v. Nicholls* affirmed the common law precept that the right to petition can be abused by malice. The penalty is loss of the privilege. 3 How. at 289, 291. We do not perceive that this aspect of the case was implicitly overruled by *Noerr-Pennington*. The Court recognized that the *Noerr-Pennington* doctrine was itself subject to abuse by sham. 365 U.S. at 144, 81 S.Ct. at 533. When this is proved, the defense fails. *See California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 511–16, 92 S.Ct. 609, 612–14, 30 L.Ed.2d 642 (1972). If one equates sham with malice, each in its proper context, the error of concluding that *Noerr-Pennington*

---

4. *See Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 1114 n. 12, 75 L.Ed.2d 96 (1983), where the Court also made the following comment about the specific issue decided in *White v. Nicholls:*

> The plaintiff sought damages for defendants' allegedly defamatory assertions in a petition

to the President of the United States requesting the plaintiff's removal from office as a customs collector, a statement entitled at most to a qualified privilege.

5. *See* note 3, *supra*.

implicitly has overruled *White v. Nicholls* is readily exposed.

AFFIRMED.