No. 5354.

J. WALLIS VS. THE NEW ORLEANS AND CARROLLTON RAILROAD COMPANY.

A party can not be held in damages for allegations set up by him in his pleadings in a suit, which assail the character of the other party, when it appears that the circumstances were such that he might reasonably have believed that the allegations were true.

APPEAL from the Superior District Court, parish of Orleans. *Haw-kins*, J. Jury trial. *R. King Cutler* and *A. J. Steele*, for plaintiff and appellee. *L. E. Simonds*, for defendants.

The opinion of the court was delivered by DE BLANC, J.

Plaintiff was one of three drivers of car No. 52, belonging to defendant. He was discharged as such in October, 1872, and on the fourteenth of said month brought suit in the Seventh Justice's Court for the wages then due him. In the answer to said suit the company alleged that plaintiff had violated his duty, in collecting fares and appropriating them to himself. That answer was filed, but was not read in said court.

The case was tried, and decided against defendant. It appealed from that decision to the Third District Court, and in the last-mentioned court, and for the first time since it had been filed, the answer already referred to was read, in presence — the plaintiff says — of from seventy to one hundred persons, many of whom were his friends.

On the twenty-seventh of November, 1872, the justice's decree was affirmed by the Third District Court, and nearly one year after, on the fifteenth of September, 1873, Joseph Wallis brought suit against defendant for five thousand dollars, on the ground that, without probable cause, it had published or caused to be published, in two courts and elsewhere, what plaintiff terms a false and malicious charge.

This case was tried by a jury, and they returned against defendant a

Wallis vs. the New Orleans and Carrollton Railroad Company.

verdict for one thousand dollars. From the judgment based on that verdict the company has appealed. It contends that said verdict and judgment are contrary to law, as there was no proof that those who represent it ever entertained any malice toward plaintiff, and none can be inferred from any of their acts.

Plaintiff testified in substance that "he knows—he did not say how—he was injured and could not get employment in consequence of the charge thus made against him. He heard—he does not say from whom—that said charge was communicated to the other railroad companies. He applied, but in vain, to them and to several parties. No one told him he was a thief, but merely that they did not want to employ him."

In his cross-examination he said: "I am out of employment about three days (meaning, we presume, since about three days); I was, after my discharge, engaged during five months as a carriage driver, and as a stage driver during one month and a half. I did not take a nickel belonging to the company; no witness swore that I did. Kinly, on whose report I was discharged, declared in court that I am not the man who received and appropriated the fare. The slander was not circulated generally, but only to railroad companies."

H. A. Harding, a witness of plaintiff, testified that "he knows him; that he is an honest man; and that the accusation made against him has been circulated throughout the city, among the owners of hacks and carriages." How he learned that; whether directly from these persons, or otherwise; what influence and effect the report had or may have had; whether it was believed, and injured plaintiff, or disbelieved and denied, he does not say.

Plaintiff alleges that the charge made against him has prevented him from obtaining a position; he did not prove either by his own declaration, or that of others, how long he was without employment. From his own lips we have the acknowledgment that, after his discharge, he was—during more than six months—engaged as a driver, and the most of the time in this city, at the very spot where, as he pretends, he could find no employment on account of the slanders published and circulated against him.

If railroad officers and owners of hacks and carriages were warned against him; if that warning was the cause that he could not procure a position, why is it that these officers and owners were not summoned? They might have sworn to the verity of the facts alleged by him, while he and the only witness who appeared in his behalf testified as to mere impressions, contradicted by his own declaration on the trial, that "he was about three days out of employment."

When and where—for the first—and, so far as we can ascertain, for

the last time—was the denounced charge published against him? In the Third District Court, in November, 1872; not before, not elsewhere. He was then surrounded by strangers, who, perhaps, did not know his. name, and by friends who, no doubt, were favorably disposed toward him. They heard the alleged slander; they heard its contradiction; and that slander fell harmless at their feet, a few moments after it was published.

As long as he does not expose it, a man's character is sacred, and he who assails it without cause should suffer; but a court can not look either out or beyond the record, and when, in that record, it finds but vague and unsupported opinions, testified to by an interested party and a friend of that party, a court can not justly punish. Were we to decide on impressions, might we not pause and inquire how it occurred that the date of the imagined wrong and that of his action for redress are so distant from one another?

As to any express or implied malice on the part of defendant toward plaintiff, when and where was it shown? In this great and impoverished city, where so many are daily seeking employment, the company selected plaintiff out of the many, gave him a position which, to be accepted, had but to be tendered, never addressed him a word of reproach, and only discharged him on the imparted information that he had been unfaithful and had violated his duty. Is there any company or any agent who would have acted otherwise?

Who informed against plaintiff? Was it a rival, an enemy, an applicant for the position he held? It was not, for that position was vacated and he did not take it. The fact that he was called as a witness and swore, as declared by plaintiff, that he was not the driver who received and retained the fare, shows that he was not prejudiced against him, but does not offset the legal effect of his previous declaration, when— without promise of reward, without hostility toward plaintiff—he pointed him out to defendant's agent and told him: "There is the man who took the nickel."

The cases referred to by plaintiff's counsel and reported in the sixth and eleventh Annuals are different from that presented to this court. In the first, the captain of a vessel was accused of having stolen and attempted to sell freight intrusted to his care. This accusation was unwarranted, had not even a pretext to stand upon. In the other case, a newspaper reporter had not merely alluded, as was his right, to plaintiff's arrest and the circumstances of that arrest, but had assumed and asserted his guilt, and accused him of other crimes, without the least foundation or excuse.

The doctrine which should govern the court in such controversies is as simple as sound. Was there a probable cause to justify the charge?

Was the charge made under the honest and reasonable belief that it was true? If so, no damages can be recovered. Applying that doctrine to this case, we can not maintain the verdict of the jury, for it is evident that the company acted upon an honest and reasonable belief, and not through that wanton and wicked disposition, grossly negligent of the rights, reputation, and feelings of others.

It is therefore ordered, adjudged, and decreed that the verdict of the jury be and is hereby set aside, the judgment thereon based annulled, avoided, and reversed, and that there be judgment in favor of defendant; the costs of both courts to be paid by plaintiff and appellee.