On Rehearing.
PROVOSTY, J.
On application for a rehearing it is pointed out that in France, by special statute, material allegations are never actionable; and that even irrelevant defamatory, allegations are not actionable, unless an order is entered, in the suit itself in which they are made,' granting the right to bring suit on them. Article 23 of Act 1819; amended in 1881. We confess frankly this statute escaped our attention. Our excuse must be that it figures as an amendment to the Code Penal, and that to the Louisiana lawyer the field of French criminal law and criminal procedure is terra incognita; we having none but statutory crimes in this state, and having adopted for our criminal procedure the common law as it existed in England in 1805. Before the adoption of this statute such allegations were actionable. Journal du Palais, verbo. “Diffamation,” Nos. 748, 750. Until a similar special statute is adopted in this state the rule under the Code must remain here as it was in France before the adoption of this act of 1819.
We do not know where counsel find support for their statement that the doctrine they contend for has been “firmly established” by the past decisions of this court. They have the solitary decision of Gardemal v. McWilliams, 43 La. Ann. 457, 9 South. 106. 26 Am. St. Rep. 1195. But does not that decision say that, “after all, the question is one of intent”? If so, the plaintiff has an action under Gardemal v. McWilliams in a case where he alleges and proves express malice. What disposition do counsel make of the decisions in Kelly v. Lafitte, 28 La. Ann. 435; Wallis v. Railroad Co., 29 La. Ann. 66; Vinas v. Insurance Co., 33 La. Ann. 1267, where the doctrine of the necessity for probable cause was laid down with every bit as much emphasis as in this case? What do counsel do with the expression of this-court in the case of Randall v. Hamilton, 45 La. Ann. 1190, 14 South. 73, 22 L. R. A. 649, where, speaking of the Gardemal Case, the comet said:
“It was never once intimated that the courts-of our state were places from which, as from places of secure refuge, they could with impunity perpetrate wrong.”
In which interpretation .of the Gardemal Case Justice McEnery, who had written the decision in the Gardemal Case, concurred.
The case of Gardemal v. McWilliams, if understood to mean that the action for slander may be maintained where the plaintiff can show that the judicial allegations were made with express malice, is exactly in line with what the Supreme Court of the United States said in the case of White v. Nicholls, 3 How. 266, 11 L. Ed. 591, which utterance was concurred in by all the judges, and, so-far as we have been able to ascertain, has-never been departed from to this day. The court (at page 290 of 3 How. [11 L. Ed. 591] said:
“We have thus taken a view of the authorities which treat of the doctrines of slander and libel, and have considered those authorities particularly with reference to the distinction they established between ordinary instances of slander, written and unwritten, and those which have been styled privileged communications, the peculiar character’ of which is said to exempt them from inferences which the law has created with respect to,those cases that do not partake of that character. Our examination, extended as it may seem to have been, called for by the importance of a subject most intimately connected with the rights and happiness of individuals, as it -is with the quiet and good order of society. The investigation has-conducted us to the following conclusions, which we propound as the law applicable thereto: (1) That every publication, either by writing, printing, or pictures, which charges upon or imputes to any person that which renders him liable to punishment, or which is calculated to make him infamous, or odious, or ridiculous, is prima facie a libel, and implies malice in the author and publisher towards the person concerning; whom such publication is made. Proof of malice, therefore, in the case just described, can never be required of the party complaining beyond the proof of the publication itself.. *310 Justification, excuse, or extenuation, if either can be shown, must proceed from the defendant. (2) That the description of cases recognized as privileged communications must be understood as exceptions to this rule, and as being founded upon some apparently recognized obligation or motive, legal, jnoral, or social, which may fairly be presumed to have led to the publication, and therefore prima facie relieves it from that just implication from which the general rule of the law is deduced. The rule of evidence as to such cases is accordingly so far changed as to impose it on the plaintiff to remove those presumptions flowing from the seeming obligations and situations of the parties, and to require of him to bring home to the defendant the existence of malice as the true motive of his conduct. Beyond this extent, no presumption can be permitted to operate, much less be made to sanctify, the indulgence of malice, however wicked, however express, under the protection of legal forms. We conclude, then, that malice may be proved, though alleged to have existed in the proceedings before a court, or legislative body, or any other tribunal or authority, although such court, legislative body, or other tribunal may have been the appropriate authority for redressing the grievance represented to it, and that proof of express malice in any written publication, petition, or proceeding, addressed to such tribunal, will render that publication, petition, or proceeding libelous in its character, and actionable, and will subject the author and publisher thereof to all the consequences of libel. And we think that, in every case of a proceeding like those just enumerated, falsehoods and the absence of probable cause will amount to proof of malice.”
In further support of the application for rehearing it is said that unless the litigant is allowed this privilege of defamation he will be hampered in the prosecution, or defense, of his rights. We do not so believe. It cannot be that a litigant is hampered by being debarred from relying upon statements for which there is not probable cause and which he himself knows to be false. A litigant should speak the truth, the whole truth, and nothing but the .truth to the court; and the least that can be required of him is that he shall not speak that which he not only 'knows to be false, but which he cannot show to have even the color of truth.
Much more hampered would the litigant be, we imagine, if he were required to swear to his pleadings under penalty of going to the penitentiary for perjury if he swore falsely. And yet that is what he is required to do in many states. E. of P. & P. vol. 22, p. 1025. No lawyer has ever thought of finding fault with equity rule No. 41 (United States Supreme Court) by which complainant may call on defendant to answer under oath, nor with rule 27, requiring all answers in admiralty to be verified.
The argument that the right to bring suit for a slander committed by means of judicial allegations may be abused is a double-edged sword. The immunity contended for may in like manner be abused. Its advocates, seem to assume that the occasions when it could be abused would be of rare occurrence ; but the fact is that every suit affords-ample room for its abuse. It might be abused in a suit on a promissory note, or on a plain loan of money. It might be made a terrible instrument in the hands of blackmailers.
Because a certain rule has prevailed in England, and has been followed more or less-extensively in those states whose jurisprudence is a mere continuation of that of England, is no reason why a court, administering the civil law, and acting under a statute, should sanction a thing working such great hardship in individual cases, without any appreciable good to the public.
, In the oral argument in this court plaintiff consented that the judgment appealed from in so far as it dismisses the suit as against Charles A. Sehreiber, John F. C. Waldo,. James E. Zunts, Charles Rosen, and Q. Fernandez, Sr., should be affirmed. Hence to-that -extent the decree heretofore handed down is set aside, and to that extent the judgment appealed from is affirmed. In all other-respects the application for rehearing is' denied.
The CHIEF JUSTICE dissents.