WAWA, INC., Appellant

v.

**ALEXANDER J. LITWORNIA & ASSOCIATES, Alexander J. Litwornia and Chester L. Taylor, Appellees**

Superior Court of Pennsylvania.

Argued June 26, 2002.

Filed Feb. 11, 2003.

David L. Grove, Philadelphia, for appellant.

Christopher Gittinger, Allentown, for Taylor, appellee.

Maura Z. McGuire, Easton, for Litwornia, appellee.

Before: LALLY–GREEN, OLSZEWSKI and POPOVICH, JJ.

POPOVICH, J.:

¶ 1 Wawa, Inc., appeals the order sustaining the preliminary objections in the nature of a demurrer of Alexander J. Litwornia & Associates, Alexander J. Litwornia and Chester L. Taylor, herein known as Appellees. We reverse.

¶ 2 The standard of review to assess a challenge sustaining preliminary objections in the nature of a demurrer is as follows:

> All material facts set forth in the complaint as well as all inferences reasonably deductible therefrom are admitted as true for [the purpose of this review.] The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Price v. Brown,* 545 Pa. 216, 680 A.2d 1149, 1151 (1996) (citation omitted).

¶ 3 The record reveals that Appellant filed a First Amended Complaint alleging that Appellees were guilty of commercial disparagement, intentional interference with actual and prospective contractual relationships, and civil conspiracy.

¶ 4 Appellant averred Appellees engaged in a consolidated effort to disparage it in three locations targeted for new convenience food markets dispensing gasoline in the Lehigh Valley area—these were in proximity to Appellee/Taylor's stores. Appellant contended Appellees contacted at least one of the landowners to dissuade her from selling and disseminated a videotape to local officials containing erroneous data that an excessive amount of traffic would be generated by Appellant's proposed convenience stores.

¶ 5 Appellees filed preliminary objections which sought dismissal of the suit on the basis "the conduct alleged by Wawa [wa]s protected by the First Amendment to the Constitution of the United States of America and/or Article I[,] Section 20 of the Pennsylvania Constitution." The court agreed and dismissed Appellant's complaint. This appeal ensued raising three issues; to-wit:

1. Do false representations made maliciously to government officials *ex parte* in connection with adjudicatory proceedings and to private citizens and associations constitute protected speech under the Petition Clause of the First Amendment of the United States Constitution, Article I, Section 20 of the Pennsylvania Constitution, and/or the *Noerr–Pennington* doctrine?

2. Does the witness immunity doctrine shield Defendants Alexander J. Litwornia & Associates and Alexander J. Litwornia from liability for conspiring with Defendants Chester L. Taylor maliciously to disseminate false and disparaging information to government officials *ex parte* in connection with the adjudicatory process?

3. Does Pennsylvania law provide any basis for a court to dismiss a complaint asserting non-environmental claims of malicious commercial disparagement if the court decides that the complaint is "nothing more than a SLAPP (Strategic Lawsuit Against Public Participation) suit"?

Appellant's Brief at 4.

¶ 6 Before addressing the merits of Appellant's initial claim, we need to recite the precepts that will guide our resolution. First, the Petition Clause has its origin in:

The First Amendment[, which] guarantees "the right of the people … to petition the Government for a redress of grievances." The right to petition is cut from the same cloth as the other guarantees of that Amendment, and is an assurance of a particular freedom of expression. In *United States v. Cruikshank*, 92 U.S. 542, 23 L.Ed. 588 (1875), the Court declared that this right is implicit in "[t]he very idea of government, republican in form." *Id.*, at 552. And James Madison made clear in the congressional debate on the proposed amendment that people "may communicate their will" through direct petitions to the legislature and government officials. 1 Annals of Cong. 738 (1789).

The historical roots of the Petition Clause long antedated the Constitution
. . . .

.     .     .     .     .

Although the values in the right of petition as an important aspect of self-government are beyond question, it does not follow that the Framers of the First Amendment believed that the Petition Clause provided absolute immunity from damages for libel.

.     .     .     .     .

In *White v. Nicholls,* [3 How. 266 (1845)], th[e United States Supreme Court] dealt with the proper common law privilege for petitions to the Government. The plaintiff in *White* brought a libel action based on letters written by Nicholis urging the President of the United States to remove the plaintiff from office as a customs inspector. The Court, after reviewing the common law, concluded that the defendant's petition was actionable if prompted by "express malice," which was defined as "falsehood and the absence of probable cause." *Id.,* at 291. Nothing presented to [the United States Supreme Court in *McDonald v. Smith,* 472 U.S. 479, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1985)] suggest[ed] that the Court's decision [in *White*] not to recognize an absolute privilege in 1845 should be altered; [the *McDonald* Court was] not prepared to conclude, 140 years later, that the Framers of the First Amendment understood the right to petition to include an unqualified right to express damaging falsehoods in exercise of that right.

Nor do the Court's decisions interpreting the Petition Clause in contexts other than defamation indicate that the right to petition is absolute.

.     .     .        .        .        .

Under state common law, damages may be recovered only if petitioner is shown to have acted with malice; "malice" has been defined by the Court of Appeals of North Carolina, in terms that court considered consistent with *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), as "knowledge at the time that the words are false, or ... without probable cause or without checking for truth by the means at hand." *Dellinger v. Belk,* 34 N.C.App. 488, 490, 238 S.E.2d 788, 789 (1977). We hold that the Petition

Clause does not require the State to expand this privilege into an absolute one. The right to petition is guaranteed; the right to commit libel with impunity is not.
*McDonald v. Smith,* 472 U.S. 479, 482–485, 105 S.Ct. 2787, 86 L.Ed.2d 384 (1984).

¶ 7 Second, we need to discuss the *Noerr–Pennington* doctrine, which originated with the United States Supreme Court's holding in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)("Noerr"), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)("Pennington"), that an individual is immune from liability for exercising his First Amendment right to petition the government. Further, the Court held that there was immunity regardless of the defendants' motivation in waging their campaigns, as it recognized that the right of individuals to petition the government "cannot properly be made to depend on their intent in doing so." *Noerr,* 365 U.S. at 139, 81 S.Ct. 523. The Court made these rulings in an antitrust context.

¶ 8 The principles of the *Noerr–Pennington* doctrine have been extended to provide defendants immunity from liability for civil conspiracy pursuant to the First Amendment. *NAACP v. Clairborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982)(First Amendment protected against a civil conspiracy claim by white merchants whose businesses were being boycotted); *Brownsville Golden Age Nursing Home, Inc. v. Wells,* 839 F.2d 155 (3d Cir.1988)(defendants were immune from conspiracy liability for damages resulting from inducing official action to decertify a nursing home).

¶ 9 One caveat to the *Noerr–Pennington* doctrine is the "sham" exception, which "emphasized that such immunity did

not extend to 'illegal and reprehensible practice[s] which may corrupt the ... [administrative and] judicial proces[s],' [*California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508,] 513, 92 S.Ct. 609, 30 L.Ed.2d 642 [ (1972) ], hearkening back to an earlier statement that antitrust immunity would not extend in lobbying 'ostensibly directed toward influencing governmental action [that] is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.' *Noerr, supra,* at 144, 81 S.Ct. 523. This line of cases thus establishes that while genuine petitioning is immune from antitrust liability, sham petitioning is not." *BE & K Const. Co. v. N.L.R.B.,* 536 U.S. 516, 122 S.Ct. 2390, 2396, 153 L.Ed.2d 499 (2002).

¶ 10 In *Barnes Foundation v. Township of Lower Merion,* 242 F.3d 151 (3d Cir. 2001), which reversed a district court's denial of attorney's fees to defendants who were sued under 42 U.S.C. § 1985(3) for conspiring (on racial discrimination grounds) to deprive the Barnes Foundation (by means of zoning restrictions) equal protection of the law, the Third Circuit Court of Appeals wrote:

Before we close our discussion of the *Noerr–Pennington* doctrine we hasten to add that persons contemplating bringing suits to stifle First Amendment activity should draw no comfort from this opinion because the uncertainty of the availability of a First Amendment defense when a plaintiff brings a civil rights case now has been dispelled. *This point is of particular importance in land-use cases in which a developer seeks to eliminate community opposition to its plans as this opinion should make it clear that it will do so at its own peril.*

242 F.3d at 162 (emphasis added); *see also Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 614–615 (8th Cir.1980)(holding private citizen immune from section 1983 liability in zoning dispute).

¶ 11 We have examined Appellant's First Amended Complaint, the contents of which are admitted as true and find the following inferences to be reasonably deducible therefrom: 1) Appellant has applications before various zoning boards to locate convenience stores in the Lehigh Valley area—contracts to purchase the sites have been executed; 2) Taylor approached a prospective seller (to no avail) to coerce the transfer of the parcel to himself; 3) Taylor enlisted the defendants Litwornia in this scheme to distribute false and disparaging information to municipal authorities and community groups to generate opposition; and 4) a videotape containing false statements was disseminated to governmental bodies and citizen groups to foster resistance to Appellant's proposed food markets (*i.e.,* severe traffic congestion, safety hazards and fatalities would result should the prospective sites be developed).

¶ 12 The content of the videotape was the brainchild of Litwornia & Associates, while the funding was provided by Taylor, the effect of which stymied the development of the sites to Appellant's financial dismay. Also, the pleadings read that Appellees falsified the volume of traffic as excessive and fabricated the accompanying safety hazards, all of which were permitted to be dispersed for "videotape presentation *ex parte* to local governmental bodies and officials that defendants knew could delay or reject Wawa's plans and proposals." Appellant's First Amended Complaint, Paragraph 29.

¶ 13 As is inferentially permissible, the videotape was disseminated to private citizens and associations to foment resistance

to Appellant's building plans, which co-alesced into a conspiracy by Appellees and neighborhood organizations "delay[ing] the approval of Wawa's zoning and other land use applications by generating opposition to the applications . . . ." *Id.* at Paragraph 35. The cumulative effect caused Appellant to suffer pecuniary loss totaling over $430,000.

■ ¶ 14 In reviewing the entire pleadings consistent with the standard utilized at the preliminary objections stage, *Price, supra,* we find Appellees proliferated false information aimed at interfering directly with the business relationships of a competitor. *See BE & K Const. Co., supra.* This type of conduct translates into a "sham" of inaccurate information communicated to incite the public. *Cheminor Drugs, Ltd. v. Ethyl Corp.,* 168 F.3d 119, 124 (3d Cir.1999)("a material misrepresentation that affects the very core of a litigant's . . . case will preclude *Noerr–Pennington* immunity . . . .").

¶ 15 Appellant's pleadings paint Appellees as effectuating governmental action directed at impeding the business affairs of a competitor. Such conduct is not protected by the Petition Clause and triggers the "sham" exception to the *Noerr–Pennington* doctrine. *BE & K Const. Co., supra; McDonald, supra.* Likewise, Appellees' effort to mobilize public opposition to Appellant's business endeavors and have the same communicated *ex parte* before governmental entities is not the type of "direct" lobbying protected by the Petition Clause. *Michigan Paytel Joint Venture v. City of Detroit,* 287 F.3d 527, 538 n. 7 (6th Cir.2002); *but see Brownsville Golden Age Nursing Home, Inc., supra* at 159. Stated otherwise, Appellees' rhetoric and celluloid

presentation were littered with fallacious data dispensed with a "malicious" motive.[1]

■ ¶ 16 Accordingly, we cannot say with certainty that no recovery is possible under the law with the admission as true of the content of the complaint regarding the dissemination of false information geared toward derailing Appellees' competitor. Further, the court's grant of Appellees' motion for preliminary objections in the nature of a demurrer was premature.[2] Therefore, the case is remanded to allow it to proceed through the judicial process.

¶ 17 As far as addressing (Issue No. 2) the witness immunity doctrine and (Issue No. 3) the applicability of dismissing Appellant's complaint as "nothing more than a SLAPP (Strategic Lawsuit Against Public Participation) suit," the court's reliance upon the protection of the First Amendment and Article 1, Section 20 of the Pennsylvania Constitution as the predicate for granting Appellees' preliminary objections dispenses with the need to review the same here. *See* Court Opinion, 12/24/01, at 3 ("The Defendants first argue that Wawa's First Amended Complaint be dismissed in its entirety since the conduct alleged by Wawa is protected by the First Amendment of the Constitution of the United States of American and/or Article I, Section 20 of the Pennsylvania Constitution. Since we agree with Defendants, and grant their demurrer to the First Amended Complaint, *we need not address the other issues that were raised.*")(emphasis added) *Cf. U.S. Health Care v. Blue Cross of Greater Pennsylvania,* 898 F.2d 914, 921 (3d Cir.1990)(" . . . we must first determine whether the statements [claimed

---

1. These averments being set forth in the First Amended Complaint are required to be viewed (as well as all inferences reasonably deducible therefrom) as true. *Price, supra.*

2. It may be that the case will be viewed differently at the summary judgment stage. However, we will not speculate on the ultimate disposition of the lawsuit now.

to be defamatory] are actionable under the substantive law governing the case before addressing whether the First Amendment prohibits the imposition of liability, since a determination of the former may obviate the need to examine the latter.") (citations omitted)

¶ 18 Order reversed, case remanded and jurisdiction relinquished.