J-A16005-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| J. BRIAN O'NEILL, O'NEILL PROPERTIES GROUP, L.P. AND CONSTITUTION DRIVE PARTNERS, LP | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| MAYA VAN ROSSUM, CARLA ZAMBELLI AND DELAWARE RIVERKEEPER NETWORK AND JOHN DOES 1 THROUGH 10 | |
| Appellee | No. 3066 EDA 2017 |

Appeal from the Order Entered August 22, 2017
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2017-03836-MJ

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED SEPTEMBER 06, 2018**

Appellants, J. Brian O'Neill, O'Neill Properties Group, L.P. ("OPG"), and Constitution Drive Partners, LP ("CDP"), appeal from the trial court's order sustaining Appellees', Maya van Rossum and Delaware Riverkeeper Network (collectively referred to herein as "DRN"), preliminary objections and dismissing Appellants' complaint.[1]  We affirm.

We briefly summarize the factual allegations set forth in Appellants' complaint.  Appellants represent that OPG is a leading real estate development company, and CDP — an affiliate of OPG — remediates and redevelops

_____

[1] According to Appellants, they have discontinued their action against Carla Zambelli.  **See** Appellants' Brief at 5 n.1.

abandoned or underutilized industrial sites. Complaint, 6/27/2017, at ¶¶ 11, 12. In 2005, CDP purchased a property in East Whiteland Township known as the Bishop Tube site, a former industrial site upon which industrial buildings and other vacant, dilapidated improvements remain standing. *Id.* at ¶¶ 13, 14. From the 1950s through 1999, a variety of owners and operators manufactured stainless steel tubes on the Bishop Tube site, which resulted in the release of significant amounts of chlorinated solvents into the soil and groundwater at the site, and such contamination remains there today. *Id.* at ¶¶ 14, 15. Further, the contamination in the groundwater has migrated off the Bishop Tube site to the surrounding community. *Id.*

To date, the Pennsylvania Department of Environmental Protection ("PADEP") has identified two potentially responsible parties — namely, Johnson Matthey, Inc. and Whittaker Corporation (collectively referred to herein as "PRPs") — that it believes have liability to investigate and remediate the contamination at and beyond the Bishop Tube site. *Id.* at ¶ 17. Although the PRPs have conducted investigations at and beyond the Bishop Tube site, they have never remediated any of the contamination, and deny that they have any responsibility to do so. *Id.* When CDP acquired the site in 2005, it entered into a Prospective Purchaser Agreement ("PPA") with the PADEP, in which the PADEP provided CDP with a covenant not to sue it in connection with the contamination, as well as with contribution protection against third party claims regarding the contamination. *Id.* at ¶ 18. In exchange, CDP committed to performing certain remedial activities to Bishop Tube's soils and

agreed to cooperate with the PADEP.  *Id.*  CDP subsequently satisfied its obligations under the PPA by installing an air sparging/soil vapor extraction ("AS/SVE") remediation system, operating it for a period of time, and paying $10,000 to the PADEP.  *Id.*  In December of 2010, the PADEP confirmed by letter that CDP satisfied all of its remedial obligations under the PPA.  *Id.*  In January of 2014, however, the PADEP notified CDP by letter that the covenant not to sue under the PPA was void due to damage caused by a salvage contractor to the no-longer-used AS/SVE system in 2011.  *Id.* at ¶ 19.  CDP disputes the PADEP's position, believing that the covenant not to sue remains in full force and effect, but the PADEP's issuance of the letter was not appealable.  *See id.*

In 2014, East Whiteland Township changed the zoning of the Bishop Tube site from industrial to residential use, and specifically rezoned the property as a Residential Revitalization District ("RRD").  *Id.* at ¶ 20.  Before this rezoning, CDP tried to market and redevelop the Bishop Tube site for commercial purposes, but that attempt proved unsuccessful due to non-environmental constraints.  *Id.* at ¶ 21.  In making this zoning decision, East Whiteland Township also considered the need for additional residential housing within the community, and recognized that CDP would construct such housing with all safe and reasonable methods to prevent exposure to contamination at the site.  *Id.*  As a result, CDP sought municipal approval to construct a 228-residence townhome community on a portion of the Bishop Tube site.  *Id.* at ¶ 22.

Appellants further claim in their complaint that DRN has resisted Appellants' proposed soil clean up, remediation, and repurposing of the Bishop Tube site, purportedly in an attempt to coerce East Whiteland Township and the Commonwealth to impede Appellants' efforts and spend millions of dollars in public revenue to remediate the site and create a park. *Id.* at ¶ 23.[2] To accomplish this goal, DRN has allegedly engaged in a campaign of misinformation, misleading residents and government officials to believe that any improvements proposed by Appellants are dangerous due to the contamination, and that improvements at the site pursuant to the RRD zoning puts surrounding residents at a greater risk for exposure. *Id.* at ¶ 24. Specifically, DRN published and distributed a flier to the community that stated that redevelopment of the site will "expose us to more of the toxins and put 200+ homes on the contaminated land!!!," and "if this development happens your community could be on the receiving end of more contamination as the toxins make their way through our local waterways and water table." *Id.* at ¶ 26. In addition, the flier represented that CDP planned to use "a $1 million grant from the [PA]DEP ([o]ur tax money) to perform a **'PARTIAL CLEAN-UP'** of the Bishop Tube site," and that the developer is refusing "to take responsibility for full removal of the toxins at the site[.]" *Id.* at ¶ 28 (emphasis in original; some internal quotation marks omitted). DRN

---

[2] According to the complaint, Delaware Riverkeeper Network is a non-profit corporation, and Ms. van Rossum is a citizen of Pennsylvania. Complaint at ¶¶ 4, 6. Based on our review of the record, we are not sure of the nature of their relationship to one another.

ostensibly published this false and misleading information to impede Appellants' business interests of improving the Bishop Tube site through their clean-up efforts and the development of the townhouse community. *Id.* at ¶ 27. Furthermore, Appellants allege Ms. van Rossum declared to a room of 200 people that Mr. O'Neill brushed up against her inappropriately, when no such event occurred, in order to discredit Appellants' efforts to improve the property. *Id.* at ¶¶ 35, 36.

On June 27, 2017, Appellants filed their complaint, raising claims against DRN for defamation/commercial disparagement, tortious interference with a contractual or business relation, and civil conspiracy. On July 26, 2017, DRN filed preliminary objections to the complaint, advancing a variety of arguments. Thereafter, on August 14, 2017, Appellants filed preliminary objections to DRN's preliminary objections, wherein they claimed that DRN improperly averred facts and attached documents not contained in the complaint or record to their preliminary objections. *See* Appellants' Preliminary Objections to DRN's Preliminary Objections, 8/14/2017, at 1-2. On August 15, 2017, DRN filed a memorandum of law and a praecipe for determination relating to its preliminary objections.

On August 22, 2017, the trial court entered an order overruling Appellants' preliminary objections to DRN's preliminary objections. On that same day, it entered a separate order sustaining DRN's preliminary objections, and dismissing Appellants' complaint. In doing so, it explained that the conduct by DNR described in Appellants' complaint is protected by the ***Noerr-***

**Pennington** doctrine and that DRN is immune from Appellants' tort claims. **See** Trial Court Order Sustaining DRN's Preliminary Objections, 8/22/2017, at 1 n.1.[3]  On September 13, 2017, Appellants filed a motion to vacate and reconsider these orders, which the trial court denied on September 21, 2017.

On September 21, 2017, Appellants filed a timely notice of appeal.  That same day, the trial court ordered Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they timely complied.  The trial court subsequently issued a Rule 1925(a) opinion, in which it determined that — in addition to immunity pursuant to the **Noerr-Pennington** doctrine — DRN also has immunity from Appellants' defamation claim under the Environmental Immunity Act, 27 Pa.C.S. §§ 8301-8305.  **See** Trial Court Opinion ("TCO"), 10/23/2017, at 17.

Presently, Appellants raise the following issues for our review:

1. Did the trial court err by failing to follow the proper procedure for ruling on preliminary objections when it: (a) failed to permit briefing and argument on Appellants' [p]reliminary [o]bjections and to allow Appellants to make a substantive response to [DRN's] improper [p]reliminary [o]bjections; (b) accepted as true all of [DRN's] allegations in their improper "speaking demurrer" and failed to construe the [c]omplaint in the light most favorable to Appellants; and (c) accepted as dispositive the affirmative defenses raised by [DRN's p]reliminary [o]bjections?

2. Where [DRN's p]reliminary [o]bjections improperly injected a First Amendment defense based on the **Noerr-**

---

[3] As discussed further *infra*, the **Noerr-Pennington** doctrine provides that "an individual is immune from liability for exercising his First Amendment right to petition the government." **Wawa, Inc. v. Alexander J. Litwornia & Associates**, 817 A.2d 543, 546 (Pa. Super. 2003) (citations omitted).

> ***Pennington*** [d]octrine, which had nothing to do with Appellants' defamation claim, was it error for the trial court to overrule Appellants' [p]reliminary [o]bjections to [DRN's p]reliminary [o]bjections?
>
> 3. Where Appellants' [c]omplaint properly pleaded a claim for common law defamation based on public statements by [DRN], was it error for the trial court to dismiss the [c]omplaint at the preliminary objection stage?

Appellants' Brief at 4.

At the outset, we acknowledge our standard of review:

> [O]ur standard of review of an order of the trial court overruling or granting preliminary objections is to determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.
>
> Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

***Greenberg v. McGraw***, 161 A.3d 976, 980 (Pa. Super. 2017) (citation omitted; brackets in original).

In their first issue, Appellants claim the trial court failed to follow proper procedure in ruling on the parties' preliminary objections. To begin, they argue that the trial court overruled their preliminary objections without giving them an opportunity to brief or argue those objections. ***See*** Appellants' Brief at 16. Moreover, they insist that the trial court erred by then immediately

- 7 -

sustaining DRN's preliminary objections, without permitting Appellants to respond substantively to them. *Id.* They also contend that DRN filed an improper "speaking demurrer" by inappropriately including many "new factual allegations" in support of its preliminary objections, which the trial court then considered. *Id.* at 20.[4] Finally, they assert that the trial court disregarded the procedural requirement that affirmative defenses — such as immunity from suit — must be raised in new matter to an answer, and not as preliminary objections. *Id.* at 21-22.

Appellants have not convinced us that such procedural deviations require us to reverse the trial court's decision and remand for further proceedings. Initially, Appellants complain that they did not have an opportunity to brief or argue their preliminary objections, nor plead over to DRN's preliminary objections once their own objections were overruled.[5] *See id.* at 17-18. We view any such errors as harmless. The trial court dismissed

---

[4] Citing *Black's Law Dictionary*, Appellants explain a "speaking demurrer" is a "demurrer that cannot be sustained because it introduces new facts not contained in the complaint." Appellants' Brief at 20 n.4 (quoting *Black's Law Dictionary* (10th ed. 2014)).

[5] "A party has a right to file a preliminary objection raising any appropriate defenses or objections which that party might have to an adverse party's preliminary objection." *Ambrose v. Cross Creek Condominiums*, 602 A.2d 864, 866 (Pa. Super. 1992) (citations omitted); *see also Chester Upland School Dist. V. Yesavage*, 653 A.2d 1319, 1324 n.8 (Pa. Cmwlth. 1994) ("The proper method for challenging the propriety of a preliminary objection is by a preliminary objection to a preliminary objection.") (citation omitted). Further, "[i]f the preliminary objections are overruled, the objecting party shall have the right to plead over within twenty days after notice of the order or within such other time as the court shall fix." Pa.R.C.P. 1028(d).

Appellants' complaint based on its determination that "the conduct described *in the [c]omplaint* is protected by the ***Noerr-Pennington*** [d]octrine and [DRN is] immune from [Appellants'] tort claims." Trial Court Order, 8/22/2017, at 1 n.1 (emphasis added); ***see also id.*** ("***Based upon the allegations of the [c]omplaint***, … the ***Noerr-Pennington*** [d]octrine applies here to bar [Appellants'] claims.") (emphasis added); TCO at 17-20 (determining that the Environmental Immunity Act applied based on the allegations in Appellants' complaint). Thus, Appellants' preliminary objections — in which they moved to strike improperly averred facts and extraneous documents included in DRN's preliminary objections, and objected to Appellees' preliminary objections for DRN's failure to sign and attach a verification in conformance with Pennsylvania Rule of Civil Procedure 1024[6] — were not relevant to the trial court's decision. Relatedly, Appellants' claim that they were not permitted to plead over to DRN's preliminary objections is also inconsequential as the trial court decided that the ***Noerr-Pennington*** doctrine and Environmental Immunity Act applied based on the allegations made by Appellants in their complaint.[7] Thus, Appellants' response to any

---

[6] Rule 1024 states, *inter alia*, that "[e]very pleading containing an averment of fact not appearing of record in the action or containing a denial of fact shall state that the averment or denial is true upon the signer's personal knowledge or information and belief and shall be verified." Pa.R.C.P. 1024(a).

[7] We also note that DRN's preliminary objections based on the ***Noerr-Pennington*** doctrine and Environmental Immunity Act were based on the

facts not of record averred in DRN's preliminary objections would have had no effect on the trial court's disposition, as the trial court did not even consider such facts in its analysis.[8]

Nevertheless, Appellants next claim that the trial court improperly relied on factual averments made in DRN's "speaking demurrer." Appellants' Brief at 19. Despite Appellants' contentions, we do not discern that the trial court relied on any of the "new facts" asserted by DRN to dispose of DRN's preliminary objections. While Appellants point to "new facts" introduced by DRN in its preliminary objections, *see id.* at 20-21, they do not cite to where the trial court actually relied on these factual allegations in ruling on DRN's preliminary objections, *id.*

_____

legal insufficiency of Appellants' pleading. *See* DRN's Preliminary Objections, 7/26/2017, at 5-10.

[8] Appellants also argue that "the trial court's actions in eliminating the opportunity for Appellants to respond in a meaningful manner to the *merits* of [DRN's p]reliminary [o]bjection[s] was clearly a violation of Appellants' [d]ue [p]rocess rights under the United States and Pennsylvania Constitutions." Appellants' Brief at 19 (emphasis in original). However, even if the trial court erred by not permitting Appellants to file a response, we see little value in remanding this matter for them to do so now. The trial court has already denied Appellants' motion to vacate and reconsider, in which they argued in their brief in support thereof that the trial court misapplied the *Noerr-Pennington* doctrine. *See* Appellants' Brief in Support of Motion to Vacate and Reconsider, 9/15/2017, at 4-6. Further, we apply the same standard of review as the trial court in reviewing preliminary objections in the nature of a demurrer, and Appellants have had an opportunity to brief the relevant issues before us. *See Pittsburgh Nat. Bank v. Perr*, 637 A.2d 334, 336 (Pa. Super. 1994) ("Our standard of review in an appeal from an order sustaining preliminary objections in the nature of a demurrer is the same as that which the trial court employs…."). Accordingly, we believe remanding this matter on this basis would be futile and a waste of judicial resources.

- 10 -

Last, Appellants maintain that the trial court improperly ruled on the merits of affirmative defenses raised in DRN's preliminary objections. *Id.* at 21. They insist that "the trial court ignored the procedural requirement that affirmative defenses are to be raised in new matter to an answer, and *not* as preliminary objections." *Id.* (emphasis in original). They say the sole exception to that rule is where an affirmative defense is clear on the face of the pleadings and, here, the immunity defense was not obvious on the face of the complaint as the alleged defamatory communications occurred only outside of any bona fide governmental proceedings. *Id.*

We disagree. This Court has regularly allowed litigants to raise immunity defenses in preliminary objections where the opposing party lodged no objections to such procedure. "Immunity from suit is an affirmative defense which must be pleaded in [n]ew [m]atter, not in preliminary objections. However, where the defense is raised by preliminary objections and this procedure is not objected to, the question of immunity from suit may be decided." *Bloom v. Dubois Regional Medical Center*, 597 A.2d 671, 675 n.4 (Pa. Super. 1991) (citations omitted).[9] Our review of the record indicates that Appellants did not object to DRN's raising immunity defenses in its preliminary objections, nor do they suggest that they did. Thus, we reject

_____

[9] *Accord Pollina v. Dishong*, 98 A.3d 613, 617 n.3 (Pa. Super. 2014); *Richmond v. McHale*, 35 A.3d 779, 782 (Pa. Super. 2012); *Soto v. Nabisco, Inc.*, 32 A.3d 787, 788 n.2 (Pa. Super. 2011); *Heinrich v. Conemaugh Valley Memorial Hosp.*, 648 A.2d 53, 57 (Pa. Super. 1994); *Mosley v. Observer Pub. Co.*, 619 A.2d 343, 344 n.1 (Pa. Super. 1993); *Preiser v. Rosenzweig*, 614 A.2d 303, 305 (Pa. Super. 1992).

this contention, and conclude that none of Appellants' procedural arguments warrant reversal.

In their second issue, Appellants claim that "[t]he ***Noerr-Pennington*** doctrine and the Environmental Immunity Act are inapposite based on the facts of this case." Appellants' Brief at 23 (unnecessary capitalization and emphasis omitted).[10] We begin by considering whether the ***Noerr-Pennington*** doctrine applies.[11]

_____

[10] We observe that Appellants' argument section for their second issue does not neatly align with the second issue set forth in their statement of the questions involved. In their statement of the questions involved, Appellants ask: "Where [DRN's p]reliminary [o]bjections improperly injected a First Amendment defense based on the ***Noerr-Pennington*** [d]octrine, which had nothing to do with Appellants' defamation claim, ***was it error for the trial court to overrule Appellants' [p]reliminary [o]bjections to [DRN's p]reliminary [o]bjections?"*** Appellants' Brief at 4 (emphasis added). However, in the argument section for their second issue, Appellants claim that "the ***Noerr-Pennington*** immunity doctrine and Environmental Immunity Act are inapposite based on the facts of this case," and that "the trial court erred by sustaining [DRN's p]reliminary objections based on immunity defenses, where no such immunity was appropriate." ***Id.*** at 23, 25 (unnecessary emphasis and capitalization omitted). We see these as different, albeit somewhat interrelated, issues. For the reasons discussed already, the trial court's overruling Appellants' preliminary objections did not affect its determination that the ***Noerr-Pennington*** doctrine applied, as it found such immunity was warranted based on the face of the complaint, not on new factual allegations made by DRN in its preliminary objections. Thus, in our opinion, whether the ***Noerr-Pennington*** doctrine applies based on the allegations in the complaint is a separate issue from the overruling of Appellants' preliminary objections.

[11] Appellants' Rule 1925(b) statement is rambling and confusing. ***Accord*** TCO at 6, 6 n.6, 10 (noting that Appellants' concise statement is "cumulative and repetitive" and acknowledging that Appellants raised 16 alleged errors therein). While we could arguably determine that Appellants have failed to

This Court has previously described the ***Noerr-Pennington*** doctrine as follows:

> [T]he ***Noerr–Pennington*** doctrine, which originated with the United States Supreme Court's holding in ***Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.***, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961)("***Noerr***"), and ***United Mine Workers v. Pennington***, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965)("***Pennington***"), that an individual is immune from liability for exercising his First Amendment right to petition the government. Further, the Court held that there was immunity regardless of the defendants' motivation in waging their campaigns, as it recognized that the right of individuals to petition the government "cannot properly be made to depend on their intent in doing so." ***Noerr***, 365 U.S. at 139, 81 S.Ct. 523. The Court made these rulings in an antitrust context.
>
> The principles of the ***Noerr–Pennington*** doctrine have been extended to provide defendants immunity from liability for civil conspiracy pursuant to the First Amendment. ***NAACP v. Clairborne Hardware Co.***, 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) (First Amendment protected against a civil conspiracy claim by white merchants whose businesses were being boycotted); ***Brownsville Golden Age Nursing Home, Inc. v. Wells***, 839 F.2d 155 (3d Cir. 1988) (defendants were immune from conspiracy liability for damages resulting from inducing official action to decertify a nursing home).
>
> One caveat to the ***Noerr–Pennington*** doctrine is the "sham" exception, which "emphasized that such immunity did not extend to 'illegal and reprehensible practice[s] which may corrupt the … [administrative and] judicial proces[s],' [***California Motor Transport Co. v. Trucking Unlimited***, 404 U.S. 508,] 513, 92 S.Ct. 609, 30 L.Ed.2d 642 [(1972)], hearkening back to an earlier statement that antitrust immunity would not extend in lobbying

---

preserve this issue by not raising it clearly and concisely in their Rule 1925(b) statement, we decline to do so. ***See*** Pa.R.A.P. 1925(b)(4) (requiring, *inter alia*, that the concise statement "set forth only those rulings or errors that the appellant intends to challenge[;]" "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge[;]" and "should not be redundant or provide lengthy explanations as to any error").

'ostensibly directed toward influencing governmental action [that] is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor.' *Noerr*, *supra*, at 144, 81 S.Ct. 523. This line of cases thus establishes that while genuine petitioning is immune from antitrust liability, sham petitioning is not." *BE & K Const. Co. v. N.L.R.B.*, 536 U.S. 516, 122 S.Ct. 2390, 2396, 153 L.Ed.2d 499 (2002).

In *Barnes Foundation v. Township of Lower Merion*, 242 F.3d 151 (3d Cir. 2001), which reversed a district court's denial of attorney's fees to defendants who were sued under 42 U.S.C. § 1985(3) for conspiring (on racial discrimination grounds) to deprive the Barnes Foundation (by means of zoning restrictions) equal protection of the law, the Third Circuit Court of Appeals wrote:

> Before we close our discussion of the *Noerr–Pennington* doctrine we hasten to add that persons contemplating bringing suits to stifle First Amendment activity should draw no comfort from this opinion because the uncertainty of the availability of a First Amendment defense when a plaintiff brings a civil rights case now has been dispelled. *This point is of particular importance in land-use cases in which a developer seeks to eliminate community opposition to its plans as this opinion should make it clear that it will do so at its own peril.*

> 242 F.3d at 162 (emphasis added); *see also Gorman Towers, Inc. v. Bogoslavsky*, 626 F.2d 607, 614-[]15 (8th Cir. 1980) (holding private citizen immune from section 1983 liability in zoning dispute).

*Wawa*, 817 A.2d at 546-47.

Appellants appear to argue that the *Noerr-Pennington* doctrine does not apply in the case *sub judice* for two main reasons. First, they maintain that the immunity does not apply because their complaint "did not cite a *petition* submitted by [DRN] to governmental bodies, nor did the [c]omplaint take issue with any comments made in meetings with any governmental bodies." Appellants' Brief at 23-24 (emphasis in original; footnote omitted).

Rather, they say that their complaint "cited a [flier] distributed house-to-house in a local residential community, and public statements in press conferences and social media, that were alleged to have defamed Appellants." *Id.* at 24. In other words, they assert that DRN made the at-issue statements outside of governmental proceedings and not to a governmental entity. *Id.* at 10. Second, Appellants insist that DRN distributed false and misleading information. More precisely, they contend that DRN "did not simply advocate a different use for Bishop Tube. Instead, [it] *blamed* Appellants for polluting Bishop Tube — which is totally false; for attempting to avoid a legal duty to remediate the pollution — also false; and [it] stated that Appellants' development of the site would expose local residents to additional pollution — which is similarly a falsehood." *Id.* at 24. (emphasis in original; footnote omitted).

The only case Appellants discuss on appeal to support their position that the *Noerr-Pennington* doctrine does not apply is *Wawa*. *See* Appellants' Reply Brief at 9-10. In *Wawa*, the convenience store filed a complaint against the appellees, raising claims of commercial disparagement, intentional interference with actual and prospective contractual relationships, and civil conspiracy. *Wawa*, 817 A.2d at 545. Wawa claimed that the appellees had "engaged in a consolidated effort to disparage it in three locations targeted for new convenience food markets dispensing gasoline in the Lehigh Valley area — these were in proximity to [the appellees' convenience] stores." *Id.* Specifically, Wawa "contended [the a]ppellees contacted at least one of the

landowners to dissuade her from selling [land to Wawa] and disseminated a videotape to local officials containing erroneous data that an excessive amount of traffic would be generated by [Wawa's] proposed convenience stores." *Id.* The appellees subsequently filed preliminary objections, arguing that their alleged conduct was protected by, *inter alia*, the First Amendment. *Id.* The trial court agreed and dismissed Wawa's complaint. *Id.* On appeal, we reversed and remanded the case for further proceedings, determining that the appellees purportedly "proliferated false information aimed at interfering directly with the business relationships of a competitor. This type of conduct translates into a 'sham' of inaccurate information communicated to incite the public." *Id.* at 548 (citations omitted). Thus, this Court concluded that the **Noerr-Pennington** doctrine did not protect the appellees given the allegations in the complaint. *Id.* (noting that such conduct "triggers the 'sham' exception to the **Noerr-Pennington** doctrine").

Appellants interpret **Wawa** as holding that "the **Noerr-Pennington** doctrine does not apply to false *public* statements made outside of governmental proceedings as part of a challenge to an application to a local governmental agency." Appellants' Reply Brief at 9 (emphasis in original). Thus, they claim that "[b]ecause the facts at issue here closely resemble those presented in **Wawa** — alleged 'protected' activities petitioning government, with collateral 'sham' activities disseminating false information publicly — this Court must reverse the trial court's dismissal of [Appellants'] complaint and remand this case for further proceedings." *Id.* at 10. We disagree.

Initially, we do not read **Wawa** as holding that the **Noerr-Pennington** doctrine does not apply to false public statements made outside of governmental proceedings. Instead, as discussed above, the **Wawa** Court ascertained that the **Noerr-Pennington** doctrine did not provide immunity as Wawa's "pleadings paint [the a]ppellees as ***effectuating governmental action directed at impeding the business affairs of a competitor***. Such conduct … triggers the 'sham' exception to the **Noerr–Pennington** doctrine." **Wawa**, 817 A.2d at 548 (emphasis added). The **Wawa** Court's decision did not center on the fact that the appellees made some of the at-issue statements outside of governmental proceedings, specifically to a local landowner and community groups. Rather, we emphasized in reversing the trial court's decision that "we cannot say with certainty that no recovery is possible under the law with the admission as true of the content of the complaint regarding the dissemination of false information geared toward derailing [the a]ppellees' competitor." **Id.** Thus, Appellants' reliance on **Wawa** does not convince us that the **Noerr-Pennington** doctrine would not protect DNR's statements to

- 17 -

community members for the mere reason that the statements were made outside of formal government proceedings.[12, 13]

Appellants also claim that the **Noerr-Pennington** doctrine does not apply here because Appellants alleged that DNR's statements were false and meant to interfere with Appellants' business interests, like in **Wawa**. **See**

---

[12] We emphasize, again, that Appellants cite to only **Wawa** to support their position that the **Noerr-Pennington** doctrine does not protect statements made to the general public outside of any governmental proceedings. They proffer no other authority, either binding or persuasive, to back this argument.

[13] Further, the complaint in the case at bar indicates that DNR was concurrently petitioning and attempting to influence the government while making these statements to the community. In their complaint, Appellants alleged that DNR has "resisted [Appellants'] proposed soil clean up, remediation[,] and repurposing of the Bishop Tube [s]ite, in a thinly-veiled attempt **to coerce the [t]ownship and the Commonwealth** to impede [Appellants'] efforts and spend many millions of dollars of public revenue to remediate the site and create a park." Complaint at ¶ 23 (emphasis added); **see also id.** at ¶ 24 (averring that DNR has "engaged in, and ha[s] conspired to engage in[,] a campaign of misinformation that is designed to mislead, and ha[s] misled, the residents of East Whiteland Township and other surrounding townships, **the officials of East Whiteland Township, and the officials of the PADEP** into believing that any improvements that are proposed by [Appellants] will be dangerous because of the contaminants currently present at the site") (emphasis added); **id.** at ¶ 31 ("Delaware Riverkeeper Network has also published documents on its website containing deceitful information in an attempt to scare the residents **and public officials of East Whiteland Township** into opposing the development of the Bishop Tube [s]ite….") (emphasis added). The allegedly defamatory flier — attached to Appellants' complaint — also called for "urgent action[,]" and asked recipients to attend a community meeting regarding the project. **See id.** at Exhibit A.

Additionally, DNR astutely points out that "communicating with and mobilizing the public is a key element of petitioning the government. … To hold a person is precluded from seeking the support of his or her neighbors when petitioning the government would … create an exception to the protections of the **Noerr-Pennington** [d]octrine that would swallow the rule." DNR's Brief at 22.

Appellants' Brief at 24; Appellants' Reply Brief at 10. However, the trial court observed that Appellants' "characterization of the statements as false is belied by the other allegations of Appellants' [c]omplaint[,]" and we agree. TCO at 18. For instance, although Appellants alleged that DNR's purpose in publishing false and misleading information was to impede the business interests of Appellants, **see** Complaint at ¶ 27, they simultaneously conceded that DNR seeks to "spend many millions of dollars of public revenue to remediate the site and create a park." **Id.** at ¶ 23; **see also id.** at Exhibit A ("Environmental [e]xperts highly recommend that this site be fully cleaned up and left as OPEN SPACE!"). In addition, Appellants recognized in their complaint that "industrial operations resulted in the release of significant amounts of chlorinated solvents … to soil and groundwater at the [s]ite[,]" and that "the chlorinated solvent contamination in groundwater has migrated significant distances beyond the boundaries of the [s]ite, generally in a [n]ortheasterly direction." **Id.** at ¶¶ 14, 15. They acknowledged that "CDP plans to clean up the soils above the water table at the site[,]" but that "any groundwater remediation required at or beyond the [s]ite is not, and has never been[,] the legal responsibility of CDP…." **Id.** at ¶¶ 28, 29; **see also id.** at ¶ 28 ("[T]he parties that caused the contamination of the groundwater continue to bear the responsibility for cleaning the contaminated groundwater under the site and downstream….").

Accordingly, Appellants admit that they plan to conduct only a partial cleanup of the site — namely to the soils above the water table — and, thus,

the groundwater at the site, where the townhouses are planned to be built, would remain contaminated. As a result, we do not consider DNR's statements that Appellants intended to conduct only a partial cleanup, and planned to build over 200 homes on contaminated land, to be false. Similarly, because the contaminated groundwater could continue to pollute surrounding areas, it is not false that the community could be exposed to more toxins. **Accord** TCO at 5 n.5 ("Anything less than full remediation of the site may potentially increase contamination of the surrounding areas.").

We therefore do not view the allegations in the complaint as establishing that DNR was sham petitioning and "proliferat[ing] false information aimed at interfering directly with the business relationships of a competitor." **Wawa**, 817 A.2d at 548. As the trial court aptly discerned, "[t]hroughout the [c]omplaint, Appellants note that [DNR] desire[s] the full remediation of the site for purposes of constructing a public park on the land. Moreover, it is clear from the pleadings that [DNR is] concerned about the spreading of contaminated soil and groundwater throughout the community." TCO at 16 (citation omitted). We agree, and do not view DNR's conduct as a sham given the allegations in the complaint detailing the environmental issues at play. As such, we conclude that DNR has immunity pursuant to the **Noerr-**

***Pennington*** doctrine, and that the trial court did not err in dismissing Appellants' complaint.[14]

Order affirmed.

President Judge Emeritus Ford Elliott did not participate in the consideration or decision of this case.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/18

---

[14] Given our disposition, we need not address the application of the Environmental Immunity Act, nor Appellants' third issue as to whether their complaint made out a claim for common law defamation. We also need not address Appellants' allegation that Ms. van Rossum falsely stated that Mr. O'Neill inappropriately brushed up against her, as Appellants develop no argument with respect to this claim. ***See Commonwealth v. Thoeun Tha***, 64 A.3d 704, 713 (Pa. Super. 2013) ("Failure to present or develop an argument in support of a claim causes it to be waived.") (citation omitted).